ROY FUTRELL, Employee, Plaintiff v. RESINALL CORPORATION, Employer, LIBERTY MUTUAL INSURANCE COMPANY, Carrier, Defendants

No. COA01-703

(Filed 16 July 2002)

**1. Workers' Compensation— occupational disease—carpal tunnel syndrome**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee's carpal tunnel syndrome was not a compensable occupational disease, because: (1) the Commission's finding that plaintiff was not at a greater risk of contracting the disease than the general public was supported by competent evidence; and (2) although there may have been some evidence tending to show plaintiff's employment could have aggravated the condition, there is no authority from this State which allows the Court of Appeals to ignore the requirement that a plaintiff seeking to prove an occupational disease show that the employment placed him at a greater risk for contracting the condition, even where the condition may have been aggravated but not originally caused by plaintiff's employment.

FUTRELL v. RESINALL CORP.

[151 N.C. App. 456 (2002)]

**2. Workers' Compensation— failure to remand case—abuse of discretion standard**

The Industrial Commission's failure to remand a workers' compensation case to the deputy commissioner to clarify or take additional evidence did not constitute an abuse of discretion even though plaintiff contends that he was unaware of the importance that the Commission would place on plaintiff's ability to establish that his employment placed him at an increased risk of developing carpal tunnel syndrome and that plaintiff should have produced medical testimony to that effect.

Judge GREENE dissenting.

Appeal by plaintiff from an opinion and award entered 7 August 2000 by the North Carolina Industrial Commission. Heard in the Court of Appeals 26 March 2002.

*Cannon & Taylor, LLP, by Richard L. Cannon, III, for plaintiff-appellant.*

*Barber & Wilson, P.A., by Timothy C. Barber and Leslie Hickman-Loucks, for defendant-appellees.*

HUNTER, Judge.

Roy Futrell ("plaintiff") appeals an opinion and award of the North Carolina Industrial Commission denying his workers' compensation claim against defendant Resinall Corporation ("Resinall") and its carrier, Liberty Mutual Insurance Company. We affirm.

On 19 April 1996 plaintiff filed a claim with the Commission contending that he had contracted an occupational disease, carpal tunnel syndrome. The evidence presented during a hearing before the deputy commissioner established that plaintiff was employed by Resinall from August 1989 through 23 December 1996. The last position held by plaintiff with Resinall was that of a resin kettle operator. His job responsibilities consisted of tearing open fifty-pound bags of chemicals with his hands, using an axe to bang on drums to loosen their contents, and monitoring kettles. Plaintiff spent at least half of his time monitoring kettles as opposed to opening bags or banging on drums, and from May until September 1996 plaintiff did not open bags or bang on drums.

In February 1996, plaintiff visited Dr. Douglas Kells complaining of pain and numbness in his right hand. Dr. Kells prescribed a splint,

some medication, and light duty work. Plaintiff continued to experience problems with his hands, and a 10 September 1996 nerve test confirmed that plaintiff had developed moderately severe carpal tunnel syndrome. Following an examination in October 1996, Dr. Kells indicated that plaintiff would be able to return to light duty work in December 1996. Plaintiff took an unpaid leave of absence from his work at Resinall pursuant to the Family Medical Leave Act. Plaintiff was discharged when he failed to return to work after his leave of absence expired on 23 December 1996.

The deputy commissioner concluded plaintiff had failed to establish that he suffered from a compensable occupational disease because he failed to show that his carpal tunnel syndrome was caused by conditions characteristic of and peculiar to his employment at Resinall, and that his employment exposed him to a greater risk of contracting the condition than the general public. Plaintiff appealed to the Full Commission. On 7 August 2000, the Full Commission entered an opinion and award agreeing with the deputy commissioner. It found as fact that plaintiff had failed to show that he was at a greater risk of developing carpal tunnel syndrome than the general public, and accordingly, denied plaintiff's claim. Plaintiff appeals.

Plaintiff brings forth two arguments on appeal: (1) the Commission erred in concluding that plaintiff had not suffered a compensable occupational disease; and (2) the Commission erred in failing to exercise its discretion to remand the case to the deputy commissioner for the taking of further evidence.

I.

[1] Plaintiff first argues that the Commission erred in concluding he had not suffered a compensable occupational disease because he presented sufficient evidence as to each required element of proof. Our review of an opinion and award of the Commission is limited to the determination of (1) whether the findings of fact are supported by any competent evidence in the record; and (2) whether the findings support the Commission's conclusions of law. *Allen v. Roberts Elec. Contr'rs*, 143 N.C. App. 55, 60, 546 S.E.2d 133, 137 (2001). The Commission's findings of fact are conclusive on appeal where supported by any competent evidence, notwithstanding the existence of evidence which would support findings to the contrary. *Id.*

A plaintiff seeking compensation for an occupational disease under N.C. Gen. Stat. § 97-53(13) (2001) must establish that his dis-

ease or condition meets the following three criteria: (1) the condition is "characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged"; (2) the condition is "not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation"; and (3) there is " 'a causal connection between the disease and the [claimant's] employment.' " *Rutledge v. Tultex Corp.*, 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983) (citations omitted). The first two elements of the three-prong test are satisfied where the plaintiff can show that "the employment exposed [him] to a greater risk of contracting the disease than the public generally." *Id.* at 94, 301 S.E.2d at 365.

With respect to whether plaintiff's employment placed him at an increased risk for developing carpal tunnel syndrome than the public generally, the Commission found that Dr. Cecil Neville, an orthopedic surgeon, testified that the nature of plaintiff's job was high impact/low repetition and would not cause carpal tunnel syndrome, and that plaintiff's employment did not place him at a greater risk for developing carpal tunnel syndrome than the general public. The Commission also found that neither of plaintiff's treating physicians, Drs. Vernon Kirk and Anthony DiStasio, offered evidence that plaintiff's job placed him at an increased risk for development of the disease as compared to the employment population at large. In addition, the Commission found that a review of Resinall's records established no other employee who performed the same duties as plaintiff had ever complained of or developed carpal tunnel syndrome. The Commission's findings are supported by the evidence.

The Commission's finding that plaintiff was not at a greater risk of contracting the disease than the general public is supported by competent evidence, and is therefore conclusive on appeal, though there may be evidence to the contrary. This finding alone supports the conclusion that plaintiff did not prove the presence of a compensable occupational disease, as case law from this jurisdiction consistently and unambiguously requires that a plaintiff prove such increased risk. *See, e.g., id.* With respect to the dissent's position that the Commission was required to make findings as to whether plaintiff's condition was aggravated by his employment, this issue has not been argued by plaintiff, and his brief makes no mention of the Commission's failure to do so. In fact, plaintiff's argument is that the evidence shows that his employment caused him to contract the disease. The issue of whether the Commission erred in failing to make findings on aggravation is therefore not properly before us. *See* N.C.R.

App. P. 28(a) (scope of appellate review limited to those issues specifically argued in briefs, and issues not so argued are deemed abandoned).

In any event, although there may have been some evidence tending to show plaintiff's employment could have aggravated the condition, there is no authority from this State which allows us to ignore the well-established requirement that a plaintiff seeking to prove an occupational disease show that the employment placed him at a greater risk for *contracting* the condition, even where the condition may have been aggravated but not originally caused by the plaintiff's employment. We cannot agree with the dissent's position that this reading of *Rutledge* effectively precludes recovery in all cases where a claimant does not argue that his employment caused him to contract the disease. It simply precludes recovery where a claimant cannot meet all three well-established requirements for proving an occupational disease. This is not a novel approach or reading of *Rutledge*.

Indeed, if the first two elements of the *Rutledge* test were meant to be altered or ignored where a claimant simply argued aggravation or contribution as opposed to contraction, then our courts would not have consistently defined the third element of the *Rutledge* test as being met where the claimant can establish that the employment caused him to contract the disease, *or* where he can establish that it significantly contributed to or aggravated the disease. *See, e.g., Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 354, 524 S.E.2d 368, 371, *disc. review denied*, 351 N.C. 473, 543 S.E.2d 488 (2000). *Rutledge* and subsequent case law applying its three-prong test make clear that evidence tending to show that the employment simply aggravated or contributed to the employee's condition goes only to the issue of causation, the third element of the *Rutledge* test. Regardless of how an employee meets the causation prong (i.e., whether it be evidence that the employment caused the disease or only contributed to or aggravated the disease), the employee must nevertheless satisfy the remaining two prongs of the *Rutledge* test by establishing that the employment placed him at a greater risk for contracting the condition than the general public. *See, e.g., Norris v. Drexel Heritage Furnishings, Inc.*, 139 N.C. App. 620, 622, 534 S.E.2d 259, 261 (2000) (upholding Commission's determination that although evidence showed plaintiff's fibromyalgia was "caused or aggravated" by her employment, where plaintiff failed to present evidence showing that employment placed her at increased risk for

contracting fibromyalgia, plaintiff did not establish compensable occupational disease).[1]

As our Supreme Court stated in *Rutledge*:

[C]hronic obstructive lung disease may be an occupational disease provided the occupation in question exposed the worker to a greater risk of contracting this disease than members of the public generally, and provided the worker's exposure to cotton dust significantly contributed to, or was a significant causal factor in, the disease's development. This is so even if other non-work-related factors also make significant contributions, or were significant causal factors.

*Rutledge*, 308 N.C. at 101, 301 S.E.2d at 369-70. Thus, *Rutledge* itself contemplates the fact that although the employment may have only contributed to or aggravated the disease, in order to be considered an occupational disease, the claimant must nevertheless prove that the employment exposed the claimant to a greater risk of "contracting" the disease. This argument is overruled.

## II.

[2] Additionally, plaintiff argues that the Commission erred in failing to exercise its discretion to remand the matter *sua sponte* to the deputy commissioner to take further evidence or clarify existing evidence prior to entering its final order. Plaintiff argues that he was unaware of the importance that the Commission would place on his being able to establish specifically that his employment placed him at an increased risk of developing the condition, and that he should have produced medical testimony to that effect. Plaintiff contends the Commission should have remanded the matter to the deputy commissioner to ascertain whether Dr. Kells was of the opinion that plaintiff's job placed him at an increased risk of developing carpal tunnel syndrome than the public at large. We do not agree with plaintiff that the Commission's failure to remand the matter to the deputy commissioner for plaintiff to clarify and/or add to his evidence constituted an abuse of discretion.

---

1. The dissent distinguishes *Norris* on the basis that the plaintiff in that case argued that her employment placed her at a greater risk for contracting the disease, thereby limiting the court's review to that issue, as opposed to aggravation. However, a review of the issues presented in this case likewise reveals that plaintiff's argument is that his employment caused him to contract his disease, and he makes no argument as to the absence of findings on aggravation, which, under the dissent's reasoning, would preclude us from reviewing the issue of aggravation.

Affirmed.

Judge TIMMONS-GOODSON concurs.

Judge GREENE dissents in a separate opinion.

GREENE, Judge, dissenting.

I disagree with the majority that our case law requires a plaintiff who is attempting to prove an *aggravation* of his disease due to his employment to show he was also at a greater risk of *contracting* the disease than the general population, I therefore dissent in part I of the majority opinion.

For diseases not specifically listed in N.C. Gen. Stat. § 97-53, such as carpal tunnel syndrome, the claimant must show that his disease is considered occupational under section 97-53(13). N.C.G.S. § 97-53(13) (2001). The burden rests on the claimant to show that: (1) " 'a causal connection between the disease and the [claimant's] employment' " exists and (2) "the employment exposed the worker to a greater risk of contracting the disease than the public generally." *Rutledge v. Tultex Corp.*, 308 N.C. 85, 93-94, 301 S.E.2d 359, 365 (1983) (citations omitted). Although the second prong of the test outlined in *Rutledge* uses the words "contracting the disease," this language evolved in the context of workers' compensation claims based on diseases that were brought about by the plaintiffs' employment conditions. *See, e.g., id.* at 90, 301 S.E.2d at 363; *Booker v. Med. Ctr.*, 297 N.C. 458, 472-74, 256 S.E.2d 189, 198-200 (1979). The analysis, however, must necessarily change when the focus shifts from causation as it relates to the initial development of a disease to the aggravation of an existing condition, because a plaintiff whose disease was aggravated by his employment does not claim to have contracted the disease at work.

While the majority cites *Norris v. Drexel Heritage Furnishings, Inc.* to support its proposition that this Court has previously held an increased risk of contracting the disease must be shown even in an aggravation case, *Norris* did not specifically deal with aggravation. *See Norris v. Drexel Heritage Furnishings, Inc.*, 139 N.C. App. 620, 622, 534 S.E.2d 259, 261 (2000), *cert. denied*, 353 N.C. 378, 547 S.E.2d 15 (2001). Instead, the Commission in *Norris* simply found the plaintiff's fibromyalgia to have been "caused or aggravated" by her employment. *Id.* Furthermore, the plaintiff in *Norris* argued she had

presented sufficient evidence that her employment as a splicing machine operator placed her at a greater risk of contracting fibromyalgia than the general public, thereby limiting the court's scope of review to this issue. *Id.* In this case, however, plaintiff's appeal to this Court rests in part on the proposition that the "*Rutledge* standard is not a perfect fit" in respect to plaintiff's claim.

As this Court has not yet considered the proper formulation of the "increased risk" factor in an aggravation case, I would hold that, in the context of an aggravation case, the analysis must rest on whether the plaintiff's job exposed him to a greater risk of having his carpal tunnel syndrome aggravated than the general population suffering from the disease. *See Goodman v. Cone Mills Corp.*, 75 N.C. App. 493, 497, 331 S.E.2d 261, 264 (1985) (a disease is compensable when it "is aggravated or accelerated by causes and conditions characteristic of and peculiar to [the] claimant's employment") (citing *Walston v. Burlington Indus.*, 304 N.C. 670, 679-80, 285 S.E.2d 822, 828 (1982)). To read *Rutledge* as the majority does would generally preclude recovery for every workers' compensation claim asserting an occupational disease based on aggravation. This would be inconsistent with N.C. Gen. Stat. § 97-53(13), which defines an occupational disease as one "due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." N.C.G.S. § 97-53(13). Accordingly, I would hold the Commission's finding in this case that plaintiff's employment did not place him at an increased risk of developing carpal tunnel syndrome as compared to the general public did not support a conclusion to deny plaintiff disability compensation based on aggravation.

Furthermore, as the majority concedes, plaintiff's evidence with respect to the employment-related aggravation of his carpal tunnel syndrome is undisputed. As such, the Commission erred in failing to find plaintiff's carpal tunnel syndrome was aggravated by his employment. *See Goodman*, 75 N.C. App. at 497, 331 S.E.2d at 264. I would therefore remand this case to the Commission for entry of a finding that plaintiff's carpal tunnel syndrome was aggravated by his employment and for consideration of whether plaintiff's job exposed him to a greater risk of having his carpal tunnel syndrome aggravated than the general population suffering from the disease.