***********
The undersigned have reviewed the prior Opinion and Award based upon the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties before the hearing in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. Plaintiff-Employee is Vickie Branson.
2. Defendants-Employers are GKN Automotive and Duke University Medical Center. The employers are self-insured with Crawford 
Company as the servicing agent for GKN Automotive.
3. At all relevant times, defendant-employers regularly employed three or more employees and were bound by the North Carolina Workers' Compensation Act. The employer and employee relationship existed between the employer, GKN Automotive and employee on or about March 6, 2000. The employer and the employee relationship existed between the employer, Duke University and employee on or about May 29, 2000.
4. Defendants will each provide a Form 22 for their respective periods of employment.
5. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of plaintiff's medical records.
6. The parties stipulated into evidence as Stipulated Exhibit 2, a packet of Industrial Commission forms and employment files.
7. The parties stipulated into evidence as Stipulated Exhibit 3, plaintiff's responses to Care Focus of Burlington's Interrogatories.
8. Plaintiff contends that the issues to be heard are: 1) whether plaintiff's work at GKN Automotive placed her at an increased risk of developing multiple chemical sensitivities, allergic rhinitis, chronic fatigue, migraines, and hyperactive airway disease? 2) whether plaintiff's work at GKN Automotive was a significant contributing factor in the development of multiple chemical sensitivities, allergic rhinitis, chronic fatigue, migraines, and hyperactive airway disease? 3) if so, to what benefits is she entitled under the Act?
9. Defendant, GKN Automotive, contends that the issues to be heard are: 1) whether plaintiff suffered a compensable occupational disease, multiple chemical sensitivities, or allergic rhinitis, arising out of her employment with defendant, GKN Automotive? 2) whether plaintiff was last injuriously exposed to her alleged occupational disease while employed subsequent to defendant GKN Automotive?
10. Defendant, Duke University, contends that the additional issue to be heard is whether plaintiff's employment with defendant, Duke University, proximately augmented her alleged occupational disease.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner in this matter, plaintiff was a 38 year old female, born January 13, 1963. Plaintiff is a nurse who has worked for several years in the nursing industry.
2. Michael J. DiMeo, M.D., is a board-certified physician of pulmonary medicine who has served for many years on the Industrial Commission Medical Panel for Occupational Disease. Dr. DiMeo first treated plaintiff in the mid to late 1980s for aspergilloma, a fungus mass in the lung, for which he provided a consultation before referring plaintiff for surgery to remove the aspergilloma. Dr. DiMeo explained that there is a condition known as allergic pulmonary aspergillosis which causes ongoing asthma type symptoms, however, plaintiff has not been worked up to determine a correlation between her symptoms and her prior aspergilloma.
3. In 1996, plaintiff was employed with Alamance Regional Hospital. Plaintiff re-established a physician-patient relationship with Dr. DiMeo in 1996 subsequent to respiratory distress from new building syndrome when plaintiff was exposed to new carpets and building materials at Alamance Regional Medical Center. In December 1996, plaintiff was diagnosed with asthma and reactive airway disease and was placed on appropriate treatment for the symptoms for these conditions. Plaintiff had allergic rhinitis since childhood and this condition was a continuum that varied depending upon internal and external factors. In 1997, plaintiff was under medication for hyperactive airways extending from the nose all the way through the chest.
4. In November 1997, plaintiff left Alamance Regional Hospital and went to work at Duke Hospital. Thereafter, plaintiff returned to Alamance Regional. From December 1998 through July 1999, plaintiff was employed at Homeplace.
5. Plaintiff continued to treat with Dr. DiMeo for the ups and downs of her respiratory conditions, including asthma, reactive airway disease, and allergic rhinitis, through 1999. During this period, plaintiff would periodically experience seasonal variation of her symptoms. Plaintiff had "very reactive airways" which Dr. DiMeo described by stating that "anything could trigger them off" including perfume. From her 1996 exposure at Alamance Regional Medical Center, plaintiff has reacted to chemicals and manifested symptoms of sensitive airways, consistent with what is referred to as chemical sensitivity.
6. In June 1999, plaintiff saw Dr. DiMeo at which time she was subjectively doing well and Dr. DiMeo was considering a gradual step-down in her prophylactic medications. Allergic rhinitis was not a major symptom complained of at this examination, although plaintiff continued on prophylactic medication for this condition.
7. Plaintiff worked for defendant, GKN Automotive from July 19, 1999 to February 21, 2000. Plaintiff remained on GKN Automotive's payroll through March 3, 2000, when plaintiff was officially placed on leave of absence and was paid disability benefits by GKN Automotive. Plaintiff received disability benefits from March 5, 2000 through April 30, 2000. These benefits were paid although plaintiff became employed with Duke University on March 6, 2000. Plaintiff was removed from GKN Automotive payroll on May 31, 2000, with the event recorded as a voluntary resignation.
8. Plaintiff was employed with GKN Automotive as the plant nurse in an industrial manufacturing facility. She conducted health classes, gave flu shots, provided treatment for minor injuries, gave medications and performed other duties.
9. Plaintiff contends that she has sustained an occupational disease due to exposure to chemicals in her employment with defendant, GKN Automotive. Plaintiff described that she worked in an office with a wall common to the manufacturing facility. The plant manufactured drive shafts for automobiles. Chemicals were used in the manufacturing process and in evidence is the MSDS sheet for Syntilo 9954C, which is a clear yellow fluid used in the manufacturing process. The MSDS sheet indicates that this substance can cause respiratory irritation. Plaintiff testified that she would notice a yellow film on the ceiling tiles in her office and that she saw a yellow mist in the air. Plaintiff brought a newspaper photograph of her son, which she had placed in her office, which she described as having turned yellow because of the chemicals in the air of her office at the GKN Automotive plant.
10. In October 1999, plaintiff saw Dr. DiMeo complaining of upper airway symptoms and mild, but increased, chest symptoms. Dr. DiMeo initially opined that the symptoms could be from a virus or seasonal allergies. Plaintiff did not give Dr. DiMeo any reason to associate the symptoms with her employment and many patients were presenting to Dr. DiMeo with similar seasonal allergic reactions at that time.
11. Plaintiff next saw Dr. DiMeo on February 14, 2000, when plaintiff complained about exposure to smoke and dust at her work at GKN Automotive and to chemicals at home. Plaintiff was using chemicals to kill dust mites, which Dr. DiMeo explained was an accepted practice at that time, however, is not popular now because the chemicals cause problems for sensitive patients. Dr. DiMeo advised plaintiff to take measures to control or limit her exposure to chemicals at work and at home and notes that her pulmonary complaints "may very likely be secondary to work exposure combined with less than ideal environmental controls at home." Plaintiff was advised to change jobs, meaning to either change the location of the employment within the plant, use protection devices such as a dust mask, or to leave the company entirely. Dr. DiMeo explained that nurses were very marketable, that there was a shortage of nurses, and plaintiff could go anywhere in the nursing profession.
12. At the February 2000 examination, plaintiff complained of headaches, which Dr. DiMeo thought were consistent with her sinuses. Dr. DiMeo explained that migraines can be triggered by sinus problems and that it can be very difficult to distinguish sinus headaches from migraine headaches.
13. Plaintiff made no respiratory complaints to Dr. DiMeo, or from the record to any other physician, from March 6, 2000 to May 31, 2000, while she worked at Duke University. During this time period, plaintiff called Dr. DiMeo's office and requested Vioxx for knee pain. However, she made no respiratory complaints.
14. Plaintiff went to work for defendant, Duke University, where she was employed from March 6, 2000 to May 31, 2000. Plaintiff contends that she left her employment at Duke University because exposure to the cleaning cart, perfume, cologne, and floor wax temporarily exacerbated her symptoms. No doctor told plaintiff to leave her employment with Duke University.
15. Plaintiff next saw Dr. DiMeo on July 26, 2000. Plaintiff had returned from a trip to Central America and had ceased using Flovent, one of her prophylactic medications. Plaintiff indicated that she felt better while in Central America and did fine until she got back home when her symptoms began to reoccur and therefore returned to using the Flovent.
16. In July 2000, plaintiff had left her employment with GKN Automotive and Duke University and was working for Kernodle Clinic. Plaintiff worked for Kernodle Clinic as a staff nurse from May 23, 2000 to September 15, 2000. Plaintiff explained that she had a temporary exacerbation of her symptoms, in particular migraine headaches, when exposed to perfume in this employment. No doctor told plaintiff to leave her employment with Kernodle Clinic. Dr. DiMeo noted that plaintiff's respiratory condition was not under good control secondary to failure to comply with medications. Dr. DiMeo also indicated that the trip in the airplane and potential exposures in Central America and on the trip were also potential triggering agents for plaintiff's condition. Plaintiff had symptoms of asthma and allergic rhinitis.
17. On August 24, 2000, plaintiff was complaining of a combination of headaches and shortness of breath. She had allergy testing which confirmed that she was sensitive to odors, including perfume and to other noxious odors.
18. Plaintiff worked for CareFocus as a community nurse manager from September 18, 2000 to August 10, 2001. She left this job because she did not have full time hours.
19. Dr. DiMeo stated that plaintiff had asthma, reactive airway disease, allergic rhinitis, and chemical sensitivity, for which she was under treatment including prophylactic medication before plaintiff went to work for GKN Automotive. He described the problem with asthmatic and upper airway conditions is that they are variable and tend to be progressive. These patients can have periods of good control, with medications, and periods of poor control. Dr. DiMeo explained that during the period from his examination on June 14, 1999, though his examination on August 24, 2000, plaintiff exhibited a range of fluctuating symptoms, however, he could not state that her symptoms had progressed. Although plaintiff subjectively presented with a number of symptoms and she was certainly ill, she wasn't experiencing severe attacks, her condition was not life threatening, she was not losing time at work because of her symptoms, and her presentation was not out of the ordinary, but was within the range of variable symptoms anticipated for her disease. Dr. DiMeo explained that plaintiff has hyperactive airway disease and that, by definition, she would react to chemicals or odors more than the average individual. Because of this disease, exposure to irritants, including chemicals, are more likely to cause exacerbation of symptoms in plaintiff. Dr. DiMeo explained that the questions of how long the exacerbation of symptoms would last, whether they would have occurred without the chemical exposure, and whether there would be long lasting effect is speculation.
20. In August 2000, plaintiff was complaining of headaches, which she associated with exposures to chemicals, which Dr. DiMeo believed were triggered by smells or odors. By April 25, 2001, plaintiff's condition appeared to be in control, with intermittent flare-ups. In September 2001, plaintiff reported to Dr. DiMeo that she was doing very well and that she attributed this to her employment at The Homeplace.
21. Plaintiff went to work for The Homeplace as the wellness director on July 27, 2001, and continues in this position. Plaintiff contends that she has no problem with chemical or odor exposure in this employment. Plaintiff's employment at The Homeplace pays her at a rate that equals or exceeds her income with GKN Automotive.
22. When Dr. DiMeo suspects that a patient has a problem from an occupational exposure, he would ask more questions concerning the occupational exposure and would document the exposure history and the patient's symptoms. Dr. DiMeo's description of how he would investigate a potential Industrial Commission claim for an occupationally induced disease, in contrast to his handling of plaintiff's claim, suggests that Dr. DiMeo considered plaintiff's condition to be the typical variation of symptoms of her pre-existing condition. Dr. DiMeo never completed any disability or remain off from work forms for plaintiff and did not find that her symptoms were disabling.
23. Dr. DiMeo has treated other patients who are employees at GKN Automotive for asthma and respiratory illnesses. Although the MSDS sheet for Syntilo 9954C shows that it is a respiratory irritant, Dr. DiMeo did not address whether his treatment of other patients who work at GKN Automotive was related to exposure to this or other chemicals at that plant.
24. For purposes of allergy testing and consultation, in June 1997, Dr. DiMeo referred plaintiff to Paul Juengel, M.D., an otolaryngologist. At that time, plaintiff had chronic drainage and lower respiratory reactivity with an allergy component. On that date, Dr. Juengel was of the opinion that plaintiff was becoming sensitized to chemicals. Like Dr. DiMeo, Dr. Juengel has examined plaintiff before and after her employment at GKN Automotive. Dr. Juengel explained that the major treatment for sensitivities is avoidance because sensitivities seem to settle down over time. Dr. Juengel could not state the cause for plaintiff's asthma.
25. Dr. Juengel saw plaintiff on February 21, 2000, at which time she had sinus drainage and was complaining of headaches. In May 2000, Dr. Juengel wrote a letter, at plaintiff's request, stating that she was sensitive to certain chemicals and fumes and that she should work in an environment away from these exposures. He explained that he wrote the letter in May 2000, rather than June 1997, because that was when it was requested.
26. Dr. Juengel indicated that in 2000, plaintiff was exhibiting complaints of headaches, which he termed as allergic cephalalgia which means "headache related to allergy." He diagnosed plaintiff with allergic rhinitis. Allergy testing was performed which revealed that plaintiff had positive results for allergy to many foods, six out of the seven foods tested. More allergy tests were performed; however, the second series was not considered to be adequate because plaintiff could have a reaction to the glycerine that is used as a solvent in performing the allergy test. Plaintiff was placed on an altered diet. Because she was allergic to so many types of foods she could not eliminate them all. Therefore, Dr. Juengel had plaintiff rotate the foods in the hopes that her food sensitivities would settle down.
27. Dr. Juengel was asked several questions concerning multiple chemical sensitivities and explained that this is a subject that the medical profession has not been able to explain. Further, it is difficult to tell the difference between someone who just has asthma and someone who has multiple chemical sensitivities. Dr. Juengel did explain, however, that in order for a substance to trigger symptoms, the patient had to experience some sensitivity ahead of time. Thus, based on plaintiff's history, plaintiff had to be exposed and sensitive to chemicals before she worked at Alamance Regional Medical Center in 1996/1997 in order for that exposure to produce her symptoms.
28. Dr. Juengel was of the opinion that plaintiff's condition has not produced disability as far as producing an inability to work. He did express that exposure to chemicals at work could trigger the symptoms of her reactive disease.
29. Based on the competent evidence of record, particularly the testimony of Dr. DiMeo and Dr. Juengel, plaintiff had reactive airway disease, including asthma, allergic rhinitis, chemical sensitivity, and headaches, before her employment with GKN Automotive and was under active medical care and prophylactic medications for this condition. Plaintiff's condition before her employment with GKN Automotive was such that she would have variations in her symptoms even with the use of medications. Dr. DiMeo explained that her condition was favorable and progressive. The evidence suggests that exposure to odors and chemicals at GKN Automotive more likely than not assisted with the trigger of reactive airway symptoms as of February 2000. Use of chemicals, at home, to kill dust mites also appeared to contribute to the symptoms presented at that time. Plaintiff's symptoms were consistent with the anticipated fluctuation of her symptoms from her pre existing disease. Plaintiff's hypersensitivity to chemicals was not caused by exposure to chemicals at GKN Automotive; rather, this condition pre-existed this employment. Dr. DiMeo could not state that the exposure to chemicals caused any permanent condition or problems. Dr. Juengel testified that sensitivities generally improve with time.
30. The undersigned accepts the testimony of Dr. DiMeo as the most competent of the medical evidence in the record because of the frequency of his treatment of plaintiff and greater knowledge of her medical history, pattern of symptoms, and treatment results. In contrast, Dr. Juengel, who saw plaintiff as a consultant to Dr. DiMeo and admitted that he was not a primary care provider for plaintiff, was not aware of plaintiff's history of headaches and other symptoms that she experienced prior to working for GKN. Further, although Dr. Juengel testified that he has taken courses in allergies and chemical sensitivities, the undersigned notes that he is an otolarongolist by training and certification, in contrast to Dr. DiMeo who is a board-certified physician of pulmonary medicine. Therefore, to the extent that these physicians disagree as to the nature and causation of plaintiff's symptoms, the undersigned gives greater weight to the opinion of Dr. DiMeo.
31. Based on the greater weight of the competent evidence, plaintiff was exposed to odors or chemicals at her employment at GKN Automotive, which contributed to inciting the symptoms of her pre-existing reactive airway disease. The resulting symptoms were not pleasant, however, they were not disabling and did not preclude plaintiff from working.
32. Plaintiff has not established that she was disabled as a result of the temporary excitement of her pre-existing reactive airway disease. Although Dr. DiMeo and Dr. Juengel advised plaintiff to refrain from exposure to odors and chemicals that she felt were irritating, no physician took her out of work. Dr. DiMeo testified that nurses were in short demand and that plaintiff had control of her work future. The evidence reveals that plaintiff was employed at more than one location on some occasions as she moved from one position to another. Although plaintiff made more or less working at different employers, the evidence does not establish that she did not have the ability to earn her wages at GKN Automotive in the available nursing positions.
33. Although plaintiff testified that she was exposed to odors while employed with Duke University, she sought no medical attention and there is no medical evidence to establish that she sustained an injury or disease from this exposure. Further, there is no evidence that plaintiff's symptoms from this exposure produced disability.
34. The evidence fails to establish that plaintiff has sustained an injury or disease from her exposure to chemicals or chemical odors at GKN Automotive or Duke University. Plaintiff has hypersensitive airway diseases which pre-dates the relevant periods of employment. She had a section of her lung inspected in the 1980s for a fungus condition, which is associated with producing asthma-like symptoms. By 1997, plaintiff was diagnosed with asthma, reactive airway disease, chemical sensitivity, and headaches, the precise diagnosis for the conditions that she complains of in this action. The medical evidence is that exposures to substances to which plaintiff is sensitive are likely to cause problems to plaintiff whereas they would not cause problems to the general public. Exposures to irritants may cause plaintiff to have temporary flare ups of her symptoms, however, it is not known how long the temporary exacerbation will last, whether it would have occurred without the offensive exposure, and whether it will cause any further injury or insult. By its very nature, plaintiff's pre-existing disease is variable and progressive even without occupational exposures.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to establish an accidental injury or occupational disease. See Nix v. Collins Aikman, ___ N.C. App. ___, 566 S.E.2d 176 (2002); Hilliard v. Apex Cabinet, 54 N.C. App. 173,282 S.E.2d 828(1981), reversed on other grounds, 305 N.C. 593,290 S.E.2d 682 (1982) (holding that occupational disease for personal sensitivities are not compensable); Mills v. J.P. Stevens Co.,53 N.C. App. 341, 280 S.E.2d 802 (1981); Sebastian v. Hairstyling,40 N.C. App. 30, 251 S.E.2d 872, disc. rev. denied, 297 N.C. 301,254 S.E.2d 921 (1979); N.C. Gen. Stat. §§ 97-2(6), 97-53(13). Plaintiff's reaction to odors and chemicals at GKN Automotive and Duke University are due to her personal sensitivity to odors and chemicals which is part of her pre-existing hyperactive airways disease. There is no evidence that because of the exposure to odors at work that plaintiff has sustained a disease or injury. Rather, she has at most sustained a temporary period of exacerbation of the symptoms for her pre- existing hyperactive airway disease, which because of the nature of her condition may have occurred even without the exposures at work.
2. Plaintiff has not proven that she developed or aggravated an occupational disease, which was due to, causes and conditions characteristic of and peculiar to her employment and which was not an ordinary disease of life to which the general public was equally exposed. N.C. Gen. Stat. § 97-53(13); See Click v. Pilot FreightCarriers, 300 N.C. 164, 265 S.E.2d 3589 (1980); Booker v. Duke MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979); Nix v. Collins Aikman, ___ N.C. App. ___, 566 S.E.2d 176 (2002); Futrell v. ResinallCorp., 151 N.C. App. 456, 566 S.E.2d 181 (2002). Plaintiff's condition was caused by her personal, unusual sensitivity to small amounts of odors, chemicals, or other irritants, which is not compensable. Nix v.Collins Aikman, supra; Sebastian v. Hairstyling, 40 N.C. App. 30,251 S.E.2d 872, disc.rev.denied, 297 N.C. 301, 254 S.E.2d 921 (1979).
3. Further, plaintiff has not established that her condition is disabling. See Hilliard v. Apex Cabinet, 305 N.C. 593, 595, 290 S.E.2d 682,683 (1982). Disability is not merely the measure of plaintiff's pre-injury wage and her post-injury wage. The issue is plaintiff's ability to earn wages, or earning capacity, after the injury. See Hill v.Dubose, 234 N.C. 446, 67 S.E.2d 371 (1951). Plaintiff has not established that she was not able to earn her wages at GKN Automotive or Duke University or in other available positions in the nursing profession.
 ***********
Based on the foregoing Findings of Fact and Conclusions of Law, the Full
Commission enters the following:
 ORDER
Plaintiff's claim for benefits is hereby DENIED.
2. The parties shall each bear their respective costs.
This the 16th day of April 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER