***********
Upon review of the competent evidence of record, including the briefs and oral arguments of the parties, with reference to the errors assigned and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms, with modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-Trial Agreement and at the hearing as:
 STIPULATIONS *Page 2 
1. The date of Plaintiff's alleged injury which is the subject of this claim is May 16, 2007.
2. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on May 16, 2007.
3. An employment relationship existed between the parties on May 16, 2007.
4. Defendant-Employer employed three or more employees on May 16, 2007.
5. Defendant-Carrier provided workers' compensation insurance coverage for Defendant-Employer at all times relevant to these proceedings.
6. Plaintiff's average weekly wage was $405.44 at all times relevant to these proceedings.
7. Defendants denied Plaintiff's claim.
8. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Pre-Trial Agreement;
 b. Stipulated Exhibit Two: Plaintiff's personnel file, including an employment description for the "small sorts" position with Defendant-Employer and a video depicting the "small sorts" position duties;
 c. Stipulated Exhibit Three: Plaintiff's medical records;
 d. Stipulated Exhibit Four: North Carolina Industrial Commission forms and filings;
 e. Stipulated Exhibit Five: Additional medical records of Plaintiff (labeled Exhibit E by the parties).
 *********** *Page 3 ISSUES
The issues to be determined are: whether Plaintiff contracted an occupational disease as a result of her employment duties with Defendant-Employer, and if so, to what workers' compensation benefits is she entitled?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 53 years old, with a date of birth of January 10, 1957. Plaintiff has a high school diploma, and associates degrees in accounting and as a paralegal. Plaintiff's employment history includes work as a property manager, real estate broker, and as a school bus driver. In 1988, Plaintiff began working for Defendant-Employer as a car washer.
2. In 2000, Dr. Edwin Thornton Preston, an orthopaedist, diagnosed Plaintiff with right carpal tunnel syndrome. Although Dr. Preston recommended surgery, Plaintiff declined. Instead, Dr. Preston administered a cortisone injection and provided Plaintiff with a wrist brace to wear. After a period of nine months, Plaintiff returned to her part-time position as a car washer with Defendant-Employer.
3. In January 2007, Plaintiff began working in the small sorts department after Defendant-Employer eliminated her part-time car washer position. In the small sorts department, Plaintiff worked part-time four to five hours per day processing packages based upon size and weight. The packages that Plaintiff handled weighed from one to eight pounds.
4. In the small sorts department, packages are divided by zip codes, and Plaintiff, as well as other employees in that department, have a lightweight scanner affixed to the top of the *Page 4 
fingers of their right hand. The scanner weighs less than one pound, and no significant amount of force is needed in order to operate it. In sorting packages, Plaintiff and other employees in the small sorts department would open the appropriate bin, scan the packages, and then place the package in a nylon bag. Once filled, Plaintiff would close the bags and place them on a conveyor belt. Plaintiff handled packages as small as envelopes, with the largest packages being approximately the size of a shoebox.
5. In 2007, Plaintiff's right carpal tunnel symptoms returned. Due to Dr. Preston's retirement, Plaintiff sought treatment from Dr. Kimberly Ann Barrie, an orthopaedist. On May 22, 2007, Plaintiff presented to Dr. Barrie, at which time she received a corticosteroid injection and a referral to occupational therapy in order to be fitted with a volar wrist splint to be worn "full time." In addition, Dr. Barrie released Plaintiff to return to full-duty work.
6. On June 7, 2007, Plaintiff presented to Dr. Andrew Rawdon Jones, an orthopaedist, and reported cramping in her right hand and difficulty making a fist for a period of several weeks. Dr. Jones diagnosed Plaintiff with right carpal tunnel syndrome, assigned work restrictions of no repetitive grasping, pushing, pulling, or lifting with her right arm, and recommended surgery. However, Plaintiff was unwilling to undergo surgery at that time.
7. On June 21, 2007, Plaintiff returned to Dr. Jones and reported continued right hand symptoms. Despite Plaintiff's ongoing symptoms, she was still apprehensive about undergoing the surgery recommended by Dr. Jones. On August 6, 2007, Plaintiff again advised Dr. Jones that she did not want to undergo surgery.
8. On June 16, 2008, Plaintiff saw Dr. Jones' physician's assistant, who ordered nerve conduction studies. At that time, Plaintiff indicated that she had not been working due to her persistent right carpal tunnel syndrome for over a year. On July 15, 2008, Plaintiff returned *Page 5 
to Dr. Jones, who noted that her nerve conduction studies revealed mild right carpal tunnel syndrome that was no worse. Plaintiff again indicated that she wished to postpone surgery, and Dr. Jones administered a corticosteroid injection.
9. On December 15, 2008, Plaintiff returned to Dr. Jones and reported that the July 15, 2008 corticosteroid injection provided some relief, but her right carpal tunnel symptoms returned. On April 14, 2009, Plaintiff saw Dr. Jones again and discussed surgery as an option. However, Plaintiff continued to refuse the surgery recommended by Dr. Jones, and so he administered another corticosteroid injection and continued Plaintiff's previously assigned work restrictions.
10. After reviewing a video of Plaintiff's employment duties in the small sorts department with Defendant-Employer, Dr. Jones opined that Plaintiff's employment duties augmented her pre-existing right carpal tunnel syndrome "to some extent" and that Plaintiff's employment duties "may have aggravated" her right carpal tunnel syndrome. Dr. Jones was also of the opinion that "if you're somebody who tends to get those inflammatory conditions and you're put out on that job, it's not many months before you start to have problems."
11. Dr. Jones' testimony was also equivocal as to whether Plaintiff's employment duties in the small sorts department with Defendant-Employer placed her at an increased risk of developing or contracting carpal tunnel syndrome over members of the general public. Dr. Jones opined that he did not think, from what he saw on the video that Plaintiff's employment duties placed her at an increased risk for developing carpal tunnel syndrome. He stated that "it looks like something most people would be able to accomplish." *Page 6 
12. However, in response to the question whether Plaintiff's employment duties in the small sorts department with Defendant-Employer create any increased risk of developing or contracting carpal tunnel syndrome, Dr. Jones stated:
 Well, yeah, I think if you're not doing that kind of thing, you're less likely to have carpal tunnel syndrome. But that kind of thing can happen in daily life just from keyboarding or cooking. I mean, if you're . . . going to be . . . a cook or chef . . . you're going to be using your hands an awful lot and . . . for some people, it's part of life to do those things. And if you're someone who has carpal tunnel or a history of that and you get into that kind of a job, you got a problem.
13. When asked whether it was fair to say that Plaintiff's employment duties in the small sorts department with Defendant-Employer increased the risk of developing or contracting carpal tunnel syndrome "to some extent," Dr. Jones opined, "I think so." Dr. Jones further stated, "I don't know the data for that for sure. . . . I would imagine that job has some little element of carpal tunnel that's not in the population at large." When reviewed in its entirety, the opinion testimony of Dr. Jones is too equivocal and speculative to satisfy Plaintiff's burden of proving that her employment placed her at an increased risk over the general public of contracting right carpal tunnel syndrome.
14. Dr. Barrie also reviewed the video of Plaintiff's employment duties in the small sorts department with Defendant-Employer. Dr. Barrie opined that flexion motions on a repetitive basis would not necessarily create an increased risk of developing carpal tunnel syndrome. Dr. Barrie could not state that Plaintiff's employment duties in the small sorts department with Defendant-Employer caused or significantly contributed to her right carpal tunnel syndrome. The opinion testimony of Dr. Barrie does not provide sufficient evidence to assist Plaintiff in meeting her burden of proving that her right carpal syndrome is a compensable occupational disease. *Page 7 
15. Plaintiff last worked for Defendant-Employer on May 24, 2007. Defendant-Employer terminated Plaintiff on November 6, 2008 per company policy due to her failure to return to work for over one year. As of the date of the hearing before the Deputy Commissioner, Plaintiff continued to be unemployed, and was not seeking new employment. Plaintiff is contesting her termination by Defendant-Employer through the union grievance process.
16. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff failed to prove that she sustained a compensable occupational disease as a result of her employment duties in the small sorts department with Defendant-Employer.
17. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff failed to prove that she is incapable of work in any employment, or that she continues to be disabled from working since May 24, 2007. The medical evidence indicates that Plaintiff's work restrictions prohibited her from repetitive grasping, pushing, pulling, or lifting with her right arm. Plaintiff is capable of performing some work; however, she failed to prove that she is unable to obtain suitable employment, or that any effort on her part to search for suitable employment would be futile.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In cases "where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E.2d 389 (1980). *Page 8 
2. In Rutledge v. Tultex Corp./King's Yarn, the Supreme Court of North Carolina held that in order for an occupational disease to be compensable under the North Carolina Workers' Compensation Act, a plaintiff must prove that the claimed disease is: "(1) characteristic of persons engaged in the particular trade or occupation in which the [plaintiff] is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be a causal connection between the disease and the [plaintiff's] employment." Rutledge v. Tultex Corp./King'sYarn, 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983). In cases where the employment exposed the plaintiff to a greater risk of contracting the disease than the general public, the first two elements are satisfied. Rutledge,308 N.C. at 93-94, 301 S.E.2d at 365.
3. With respect to the increased risk test in the context of a case involving aggravation of an occupational disease not originally caused by the employment at issue, the Supreme Court of North Carolina, in Chambers v. Transit Management, noted that:
 There is no authority from this State which allows us to ignore the well-established requirement that a plaintiff seeking to prove an occupational disease show that the employment placed him at a greater risk for contracting the condition, even where the condition may have been aggravated but not originally caused by the plaintiff's employment. . . . [I]f the first two elements of the Rutledge test were meant to be altered or ignored where a [plaintiff] simply argued aggravation or contribution as opposed to contraction, then our courts would not have consistently defined the third element of the Rutledge test as being met where the [plaintiff] can establish that the employment caused him to contract the disease, or where he can establish that it significantly contributed to or aggravated the disease. Rutledge and subsequent case law applying its three-prong test make clear that evidence tending to show that the employment simply aggravated or contributed to the employee's condition goes only to the issue of causation, the third element of the Rutledge test. Regardless of how an employee meets the causation prong . . ., the employee must nevertheless satisfy the remaining two prongs of the Rutledge test by establishing that the employment placed him at a greater *Page 9 
risk for contracting the condition than the general public. Chambers v. Transit Management, 360 N.C. 609, 613, 636 S.E.2d 553, 555-556 (2006), quoting, Futrell v. Resinall Corporation, 151 N.C. App. 456, 458-459, 566 S.E.2d 181, 183 (2002), aff'd per curiam, 357 N.C. 158, 579 S.E.2d 269 (2003) (Emphasis in original).
4. Plaintiff failed to establish, by the greater weight of the evidence, that as a result of her employment with Defendant-Employer in the small sorts department she contracted right carpal tunnel syndrome, an occupational disease, or that her employment with Defendant-Employer significantly contributed to her right carpal tunnel syndrome. Plaintiff also failed to establish, by the greater weight of the evidence, that her employment with Defendant-Employer placed her at an increased risk of contracting right carpal tunnel syndrome as compared to members of the general public not so employed. The opinion testimony of Dr. Jones is too equivocal and speculative to satisfy Plaintiff's burden of proving that her employment placed her at an increased risk over the general public of contracting right carpal tunnel syndrome. Dr. Barrie could not state that Plaintiff's employment duties in the small sorts department with Defendant-Employer caused or significantly contributed to her right carpal tunnel syndrome. N.C. Gen. Stat. § 97-53(13) (2009); Chambers,360 N.C. 609, 636 S.E.2d 553 (2006); Young v. Hickory BusinessFurniture, 353 N.C. 227, 538 S.E.2d 912 (2000);Rutledge, 308 N.C. 85, 301 S.E.2d 359 (1983).
5. Because Plaintiff's right carpal tunnel syndrome is not a compensable occupational disease, she is not entitled to any workers' compensation benefits. N.C. Gen. Stat. §§ 97-2(6), 97-25 (2009).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following: *Page 10 
 AWARD
1. Plaintiff's claim for workers' compensation benefits due to an occupational disease is DENIED.
2. Each side shall bear its own costs.
This the ___ day of May 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER