***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris with modifications.
 *********** ISSUE
1. Whether Plaintiff sustained a compensable injury by accident, injury by specific traumatic incident, and/or occupational disease to his neck and/or right shoulder?
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The date of the alleged injury by accident, specific traumatic incident or occupational disease is on or about May 12, 2008, or as otherwise shown by the evidence.
4. At the time of the injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and there was an employer-employee relationship between Defendant-Employer and Plaintiff, and Sedgwick CMS was the carrier on the risk.
5. Defendants have denied an injury by accident arising out of and in the course of the employment by filing a Form 61 dated September 23, 2008.
6. Plaintiff's average weekly wage is $430.00, resulting in a compensation rate of $286.66.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Plaintiff's medical records
The following documents were accepted into evidence as Plaintiff's exhibits: *Page 3 
 • Exhibit 1: Job description for property maintenance worker
 • Exhibit 2: Injury report
Transcripts of the depositions of the following were received post-hearing:
 • Dr. Adam T. Thorp
 • Dr. Q. A. Thai
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 40 years old as of the date of the hearing before the Deputy Commissioner, having a date of birth of November 2, 1968.
2. As of the time of the hearing before the Deputy Commissioner, Plaintiff had worked approximately three years in Defendant-Employer's maintenance department. Plaintiff was a property maintenance worker, and he performed manual work in the maintenance of buildings and grounds.
3. In early 2008, Plaintiff was assigned to assist Defendant-Employer's Parks and Recreation Department for two days per week.
4. One of Plaintiff's job duties while assisting the Parks and Recreation Department was to use a riding mower to mow the grass on a tract of land measuring approximately 14 acres in size. The tract of land was formerly a cornfield which had been leveled to convert the field into a sports complex and play area. It took Plaintiff approximately seven hours to mow the tract of land. *Page 4 
5. Plaintiff testified that he was jarred up and down and from side to side as he operated the riding mower over the tract of land, which he stated was comprised of uneven ground. Plaintiff also testified that the riding mower provided minimal shock absorption.
6. Around the middle of May 2008, approximately two weeks after he started mowing the tract of land, Plaintiff began to notice pain and numbness in his right shoulder and arm, and stiffness in his neck. Over the next several weeks Plaintiff's symptoms worsened to the point that he felt he could no longer manage them with over-the-counter medications.
7. Plaintiff first reported his complaints to Defendant-Employer in an August 1, 2008 meeting with Defendant-Employer's personnel director. Plaintiff and the personnel director arrived at a date and time of injury of "approx. 5/15/08" based on their review of Plaintiff's time sheets, which placed Plaintiff's start date on the Parks and Recreation Department assignment at around that date.
8. Plaintiff testified that there was no particular event that triggered the symptoms in his right arm/shoulder and neck. Rather, these symptoms came on gradually, worsening over time, and Plaintiff attributed them to periodically being jarred about on the riding mower over the course of several weeks.
9. Plaintiff presented to Dr. Adam Thorp, an orthopedic surgeon, on August 6, 2008 with right shoulder complaints that he attributed to being jarred about on the riding mower. Plaintiff did not relate a specific injury to Dr. Thorp. Dr. Thorp could not initially determine whether the source of Plaintiff's pain was a distinct problem originating in the shoulder, a distinct problem originating in the neck, or a combination of the two.
10. Dr. Thorp eventually ordered a cervical MRI, which was performed on October 13, 2008 and which showed a disc bulge/protrusion at C5-6. Based on the MRI result, Dr. Thorp *Page 5 
opined that Plaintiff's problem could more likely be a neck problem than a shoulder problem and he referred Plaintiff for a consultation with Dr. Q. A. Thai, a neurosurgeon.
11. Dr. Thai ordered an EMG study, which was performed on November 20, 2008. Following the study, Dr. Thai diagnosed Plaintiff with chronic C6 radiculopathy and recommended non-surgical treatment.
12. Dr. Thai could not provide an opinion as to the cause of Plaintiffs' C6 radiculopathy because he could not determine when it started. He stated that degeneration at C5-6 is extremely common in Plaintiff's age group.
13. Plaintiff subsequently returned to Dr. Thorp who diagnosed probable impingement syndrome in Plaintiff's right shoulder, and recommended an arthroscopic procedure to further assess Plaintiff's condition.
14. Dr. Thorp testified that it was hard to say what brought Plaintiff's problems on because impingement is oftentimes cumulative in nature as opposed to the result of a specific event. He assumed that Plaintiff had a pre-existing condition which he opined could have been exacerbated by bouncing up and down on the riding mower.
15. Dr. Thorp further opined that Plaintiff's job was "a cause" of the condition for which he sought treatment, and that being jarred about on the riding mower would be among those activities that would place Plaintiff at an increased risk for the aggravation of a pre-existing shoulder condition. Dr. Thorp did not testify, however, that Plaintiff's job placed him at an increased risk, over that faced by the general population, for the development of shoulder pathology.
16. Plaintiff has not missed any work as a result of his condition and continues to work full-time for Defendant-Employer. *Page 6 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not describe any "accident" or specific traumatic incident within the meaning of the Workers' Compensation Act. Further, he has not shown through expert medical testimony that his employment more likely than not was a significant cause of his right shoulder and/or neck conditions. As such, he has failed to show that he sustained a compensable injury to his right shoulder and/or neck. N.C. Gen. Stat. § 97-2(6); Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003).
2. Plaintiff has further failed to show that his job duties with Defendant-Employer placed him at an increased risk, over that faced by the general population, of developing his right shoulder and/or neck conditions. As such, Plaintiff has not shown that he developed a compensable occupational disease in his right shoulder and/or neck. N.C. Gen. Stat. § 97-53(13); Futrell v. Resinall Corp.,151 N.C.App. 456, 460, 566 S.E.2d. 181, 184 (2002).
3. Because this claim fails on the grounds stated above, the Full Commission does not reach the issue of whether this claim is barred pursuant to the notice provisions of N.C. Gen. Stat. § 97-22.
4. Plaintiff is not entitled to any compensation in this claim.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD *Page 7 
1. Under the law, Plaintiff's claim must be and is hereby DENIED.
2. Each side shall bear its own costs. As part of their costs, if they have not done so already, Defendants shall pay an expert witness fee to Dr. Thorp in the amount of $551.00 or the amount actually billed, whichever is less. It is noted that Deputy Commissioner Harris set the expert witness fee for Dr. Thai via Orders filed earlier in this claim.
This the 20th day of August, 2010.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1