***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Stephenson. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms and modifies the Opinion and Award of Deputy Commissioner Stephenson.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Employer/Employee relationship existed between the Employer-Defendant and the Employee-Plaintiff at the time of the alleged incident.
2. Rex Healthcare was self-insured and Allied Claims Administration was the servicing agent at the time of the alleged incident.
3. The date of the alleged injury was April 8, 2002.
4. At all relevant times, Employer-Defendant regularly employed three (3) or more employees and was bound by the North Carolina Workers' Compensation Act.
5. In addition, the parties stipulated into evidence the following:
 a. Pre-Trial Agreement that was stipulated into evidence as Stipulated Exhibit 1;
 b. Industrial Commission forms were accepted as Stipulated Exhibit 2;
 c. Plaintiff's request for days off was accepted as Stipulated Exhibit 3;
 d. Plaintiff's recorded interview with the carrier was accepted as Stipulated Exhibit 4;
 e. The ergonomic evaluation of plaintiff's job and a packet of medical records were accepted as Stipulated Exhibits 5 and 6 respectively.
6. The issues for determination are:
 (a) Whether plaintiff suffers from a compensable occupational disease as the result of her employment with Rex Healthcare.
(b) If so, to what benefits is she entitled?
 EVIDENTIARY RULINGS
Plaintiff-Appellants' Motion to have the Full Commission receive new evidence is hereby DENIED.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff Diana Rizk is 5'5" tall. She weighed 289 pounds at the time of the hearing before the Deputy Commissioner. She has a high school diploma and one year of college.
2. Plaintiff began employment with Rex Healthcare in approximately 1989. She held a number of positions during her time with Rex. The final one was as a customer service representative, which she performed for her last six or seven years with Rex. Plaintiff testified, at the hearing before the Deputy Commissioner, that her job as a customer service representative was to handle telephone inquires from patients and providers. She worked Monday through Friday, 8:00 a.m. to 5:00 p.m. Plaintiff was given fifteen minute breaks in the morning and afternoon, as well as one-hour lunch breaks. She worked "some" overtime. Plaintiff further testified that her job duties required her to do "data entry" "all day." There was no change in her job duties in the twelve months preceding the development of her hand problems.
3. Plaintiff's problems with her hands began in April of 2002. Plaintiff's alleged date of injury is April 8, 2002. Just prior to this time, plaintiff was out of work on short term and long term disability for serious cardiac health conditions. Plaintiff had a history of high blood pressure and anemia. In February of 2002, she suffered congestive heart failure that required emergency medical treatment. Plaintiff did not return to work until the end of March 2002. At the time of the hearing, plaintiff was taking a number of cardiac medications, including a diuretic to help reduce fluid retention.
4. While plaintiff claimed she told her supervisor about her hand problems in April of 2002, she did not file a variance report to document any alleged work-relatedness until October of 2002. She was treated by Dr. Hammer through Rex and by her family physician Dr. Moore. She was ultimately referred to Dr. Jon Kolkin.
5. Plaintiff continued working full-time during this treatment. She did not miss more than seven days of work as a result of her hand problems, and she was able to perform the full duties of her work. Plaintiff was terminated from employment with Rex for cause in February of 2003. Her termination was not related to her hand problems.
6. Plaintiff has been unemployed since February 24, 2003. She received unemployment compensation at the rate of $245.00 per week since April 26, 2003. She still received unemployment compensation at the time of the hearing before the Deputy Commissioner.
7. Plaintiff underwent surgeries to her hands in March and May of 2003. Plaintiff admitted that Dr. Kolkin released her on July 10, 2003 with no restrictions. Plaintiff also testified that her hands currently "feel fine." She stated that her hands were so much better that she could go in and do her job today had she not been terminated.
8. An ergonomic evaluation of plaintiff's job was conducted by licensed physical therapist, athletic trainer and certified ergonomics expert, Mr. Alex Arab. Mr. Arab prepared a report summarizing the findings from his evaluation of plaintiff's job. This was introduced into evidence as a stipulated exhibit at the hearing and was received into evidence at Mr. Arab's deposition. He also performed a videotaped job analysis of plaintiff's position, which was received into evidence without objection at his deposition.
9. Mr. Arab's evaluation was conducted on March 21, 2003. He spoke with plaintiff's supervisor, and he also watched two employees who were actually performing the same job that plaintiff held. He directly examined plaintiff's workstation and saw an employee performing plaintiff's job in that workstation. Mr. Arab's findings were corroborated at the hearing by the testimony of Ms. Sue Nobles. The report and videotape produced by Mr. Arab were accurate representations of plaintiff's job as she actually performed it.
10. The tasks performed in plaintiff's job varied a great deal during the day. They included typing, keying, mousing, writing, talking on the phone, and filing. There was not one task being performed all the time. Also, the pace of the work was very calm and controlled. Typing was done only 30-40 percent of the day, and this was not continuous typing like data entry. It only involved typing a few sentences at a time and making a few keystrokes with frequent breaks between groups of strokes. The mousing required was below suspected danger levels. The temperature in the office was normal for an office environment. It was not near the level of cold that has been associated with the development of carpal tunnel syndrome in refrigerated and outdoor environments. There was no vibration risk associated within the job. Plaintiff's workstation was configured in an ergonomically appropriate manner.
11. The ergonomic evaluation concluded that plaintiff's job had "very little risks for a cumulative trauma disorder. . . ." Mr. Arab opined plaintiff's job and duties with Rex were not a significant contributing factor in the development of her carpal tunnel syndrome. He further opined plaintiff's job and duties with Rex did not place her at an increased risk for developing carpal tunnel syndrome as compared to members of the public generally. Mr. Arab's opinions were based in the peer-reviewed scientific and medical literature on the subject of carpal tunnel syndrome. Mr. Arab testified the most likely cause of plaintiff's carpal tunnel syndrome was fluid retention related to her cardiac disease.
12. On October 28, 2002, Plaintiff sought treatment with Dr. Jon Kolkin, an orthopedic surgeon. Plaintiff was eventually diagnosed with bilateral carpal tunnel syndrome. Dr. Kolkin performed carpal tunnel release surgery on plaintiff's right hand on March 25, 2003, and her left hand surgery was May 28, 2003. Plaintiff reached maximum medical improvement and was discharged by Dr. Kolkin on July 10, 2003 to full, regular work duties. Three percent (3%) ratings were assigned to each of her hands. Dr. Kolkin opined plaintiff was capable of earning wages in her regular position and in other types of employment at that time.
13. On direct examination, Dr. Kolkin testified that carpal tunnel syndrome could be caused by doing data entry for a typical 40 hour workweek. However, on cross-examination, Dr. Kolkin explained that by "data entry work," he understood that to mean somebody who was sitting at a desk and keying for "80 percent" of the day. Dr. Kolkin was not aware when he expressed his opinion that an ergonomic evaluation had been performed of plaintiff's job. After reviewing the evaluation, Dr. Kolkin questioned the relationship of plaintiff's carpal tunnel to her job at Rex.
14. Dr. Kolkin opined that there are a number of factors that are known in the medical community to increase the risk of carpal tunnel syndrome, including obesity. They also included fluid retention, which is commonly associated with high blood pressure and any number of cardiac abnormalities, including congestive heart failure.
15. Plaintiff's description of performing "data entry" work "all day" is not deemed to be credible. The greater weight of the evidence established that plaintiff's job duties were consistent with those contained in the ergonomic evaluation and videotape job analysis performed by ergonomics expert Alex Arab.
16. Dr. Kolkin's testimony regarding any causal relationship between plaintiff's job and her carpal tunnel syndrome is not given any weight. Dr. Kolkin's understanding of plaintiff's job was fatally flawed. Once he was provided with more information, he was unable to render a competent opinion regarding causation. Furthermore, Dr. Kolkin's testimony cannot suffice as competent evidence proving an occupational disease because it was speculative and it did not properly address increased risk.
17. Plaintiff has not met her burden of proving a compensable occupational disease. Plaintiff's job duties with Rex Hospital neither significantly contributed to, nor placed her at an increased risk for developing carpal tunnel syndrome as compared to members of the public generally. The greater weight of the evidence established that plaintiff's carpal tunnel syndrome was an idiopathic condition caused by factors not related to her work with Rex Hospital.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain a compensable injury by accident arising out of and in the course of her employment with Defendant-Employer on or about April 8, 2002. N.C. Gen. Stat. §97-2(6).
2. The plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13). This requires plaintiff to show that (1) the disease must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation. Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101 (1981). In the instant case, plaintiff has failed to establish these elements by competent evidence.
3. Plaintiff has failed to prove by the greater weight of the evidence that her employment with defendant-employer exposed her to a greater risk of developing carpal tunnel syndrome as compared to the general public. N.C. Gen. Stat. § 97-53(13);Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983);Norris v. Drexel Heritage Furnishings, Inc., 139 N.C. 620,534 S.E.2d 259 (2000); Futrell v. Resinall, 151 N.C. App. 456,566 S.E.2d 181, affirmed, 357 N.C. 158, 579 S.E.2d 269 (2003).
4. Plaintiff has failed to carry her burden of proof. Therefore, plaintiff is not entitled to recover benefits under the Act. Defendants are not responsible for any treatment or disability related to such conditions. N.C. Gen. Stat. §§ 97-53 (13); 97-2(6); 97-53(13) (2001); Holley v. Acts, Inc.,357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003); Young v. Hickory BusinessFurniture, 353 N.C. 227, 230-31, 538 S.E.2d 912, 915-16 (2000);Click v. Pilot Freight Carriers, 300 N.C. 164, 167,265 S.E.2d 389, 391 (1980).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim is hereby denied.
2. Each party shall pay their own costs.
This the ___ day of August, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER