***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement, incorporated herein by reference, and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, the employer-employee relationship existed between the employer and the employee.
3. At all relevant times, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act.
4. Duke Energy Corporation is a duly qualified self-insured corporation. Hartford Specialty Risk Services is the third-party administrator on these claims.
5. Plaintiff's average weekly wage would yield the maximum compensation rate for the year relevant to any injury for which she may be entitled to benefits.
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner the Plaintiff was 50 years old, had completed the ninth grade and received her GED and a machinist degree.
2. The Plaintiff worked for the Defendant as a Nuclear Maintenance Specialist. The Plaintiff's job duties included removing, repairing and replacing valves, performing housekeeping chores, paperwork and research.
3. In 1992 the Plaintiff had cervical spine surgery performed by Dr. Nicholas Grivas.
4. The Plaintiff testified at the hearing before the Deputy Commissioner that on January 30, 2001 she tried to carry a metal pipe weighing at least 26 pounds on her left shoulder up three flights of stairs, which was approximately the length of a football field, to the machine shop for repair. The Plaintiff further testified at the hearing before the Deputy Commissioner that she was about to collapse at the top of the last staircase and a co-worker took the pipe on to its destination. Once relieved of the weight and as Plaintiff tried to gather her strength she felt immediate pain, burning and stinging in her neck and shoulder area.
5. The Plaintiff immediately went to her supervisor, Hugh Michaels, on January 30, 2001 to report her injury.
6. On February 4, 2001 the Plaintiff presented to Dr. William King, a Chiropractor, complaining of back pain. However after several months of treatment, Dr. King was unable to provide any relief to Plaintiff for her pain.
7. On October 1, 2001, the Plaintiff returned to Dr. Grivas complaining of neck pain and left arm numbness. Dr. Grivas ordered an MRI which revealed nerve root impingement at C6-7. Dr. Grivas recommended surgery, which he performed on December 21, 2001. The Plaintiff continued to follow up with Dr. Grivas and he gave her restrictions of no lifting greater than 20 pounds, no climbing and working only 40 hours per week.
8. Dr. Grivas opined that the Plaintiff's work injury of January 30, 2001 could have caused an exacerbation or could have aggravated her preexisting back condition.
9. At the hearing before the Deputy Commissioner, the Plaintiff testified that she returned to work performing clerical duties after her December 21, 2001 surgery and under Dr. Grivas' restrictions. However, Plaintiff began to experience pain in her upper extremities and she presented to Dr. Harry Caulfield upon the recommendation of a co-worker.
10. Dr. Caulfield, a plastic and reconstructive surgeon, diagnosed the Plaintiff with bilateral carpal tunnel syndrome and recommended Plaintiff undergo carpal tunnel release surgery. Although Dr. Caulfield causally related Plaintiff's injury to her job with Defendant and opined that her job duties placed her at an increased risk, the Plaintiff never told Dr. Caulfield that there was any relationship between her symptoms and her job duties. The Plaintiff testified at the hearing before the Deputy Commissioner that her job did not cause her any problems with her hands and her co-workers also testified that they do not believe their job to be repetitive. Furthermore, Dr. Caulfield acknowledged Plaintiff's risk factors for developing carpal tunnel syndrome, including, diabetes, obesity and hypothyroidism. Dr. Caulfield also admitted that he had no knowledge of Plaintiff's job other than that as described by Plaintiff's counsel. Dr. Caulfield reviewed no video or any written job description of Plaintiff's actual job and has no independent knowledge of Plaintiff's actual job duties.
11. On October 3, 2002 the Plaintiff presented to Dr. William Hunter, neurosurgeon, complaining of ongoing neck pain. The Plaintiff told him about her prior 1992 neck surgery. Dr. Hunter ordered a CAT scan myelogram of the Plaintiff's neck and a needle test. The tests revealed an irritation of one of Plaintiff's nerve roots. Dr. Hunter diagnosed pressure of the nerves on the Plaintiff's neck caused by bulging disks and bone spurs. Dr. Hunter recommended surgery. Dr, Hunter performed a posterocervical laminectomy at multiple levels on December 9, 2002.
12. Following surgery, the Plaintiff still complained of pain in her neck. This pain continued throughout February 2003 and into April 2003.
13. The Plaintiff last visited Dr. Hunter on April 11, 2003, and continued to complain of neck pain. Nevertheless, Dr. Hunter began discussing return to work issues with the Plaintiff.
14. Dr. Hunter opined to a reasonable degree of medical certainty that the January 30, 2001 event at work where Plaintiff lifted the heavy pipe and carried it up the three flight of stairs caused her neck problems and her pain.
15. The Plaintiff presented to Dr. Caulfield again on August 26, 2002 complaining of pain in her neck and back as a result of her January 30, 2001 work related accident. Dr. Caulfield was more concerned about Plaintiff's neck and back pain as her arm and hand pain had virtually subsided. Dr. Caulfield stated that he would have eased Plaintiff back to work over the next several weeks but due to her continuing back and neck pain he instead referred the Plaintiff to a pain management specialist, Dr. Kirsten D'Amore.
16. On March 12, 2003 the Plaintiff presented to Dr. D'Amore complaining of tightness in her neck muscles. After several visits to Dr. D'Amore the Plaintiff continued to experience pain in her neck.
17. On September 5, 2003 the Plaintiff presented to Dr. D'Amore requesting a rating on her neck. Dr. D'Amore continued Plaintiff's pain medications, her home muscle stimulator and scheduled her for EMG nerve conduction study. Although neither Dr. Hunter nor Dr. D'Amore have found Plaintiff to be at maximum medical improvement, nor have either released her to return to work, Dr. D'Amore stands ready to rate the Plaintiff's neck.
18. The Plaintiff failed to present any competent evidence that the Plaintiff's carpal tunnel syndrome is characteristic of her occupation and not an ordinary disease of life. The Full Commission gives no weight to Dr. Caulfield's opinion regarding the relationship between Plaintiff's job and her carpal tunnel syndrome.
19. The Plaintiff has not met her burden of proving a compensable occupational disease. The competent evidence in the record fails to establish that the Plaintiff contracted an occupational disease from her job with Defendant.
20. The competent evidence in the record does establish that the Plaintiff sustained an injury by accident arising out of and in the course of her employment and as a direct result of a specific traumatic incident of the work assigned to her on January 30, 2001. Further, plaintiff has not returned to work, and is disabled from any employment as a consequence of the injury by accident.
21. Plaintiff is entitled to $620.00, the maximum weekly compensation rate for 2001. which is $620.00.
 ***********
Based upon the foregoing stipulations and findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. A plaintiff seeking compensation for an occupational disease under N.C. Gen. Stat. § 97-53(13) must establish that his disease or condition meets the following three criteria: (1) the condition is "characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged"; (2) the condition is "not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation"; and (3) there is "a causal connection between the disease and the [claimant's] employment." Rutledgev. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983); Norris v. DrexelHeritage Furnishings, Inc., 139 N.C. 620, 534 S.E.2d 259 (2000); Futrellv. Resinall, 151 N.C. App. 456, 566 S.E.2d 181, affirmed, 357 N.C. 158,579 S.E.2d 269 (2003).
2. In addition, the claimant must show that the employment significantly contributed to, or was a significant causal factor in, the disease's development. Hardin v. Motor Panels, Inc., 136 N.C. App. 351,524 S.E.2d 368 (2000) (citing Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983)). It must be shown factually that claimant's occupational exposure was such a significant factor in the development of the occupational disease that without it the disease would not have developed to such an extent that it caused physical disability that resulted in claimant's incapacity for work. Wilkins v. J.P. Stevens Company, 333 N.C. 449, 426 S.E.2d 675 (1993).
3. In this case, the plaintiff has failed to establish that she suffers from an occupational disease within the meaning of N.C. Gen. Stat. §97-53(13).
4. The Plaintiff sustained an injury by accident to her neck arising out of and in the course and scope of her employment and as a direct result of a specific traumatic incident of the work assigned on January 30, 2001. N.C. Gen. Stat. § 97-2(6).
5. As a result of the Plaintiff's compensable injury by accident to her neck and back, she is entitled to receive indemnity benefits at the maximum weekly compensation rate for 2001 which is $620.00. The beginning dates of the indemnity shall be determined based upon the Defendant's attendance and other business records. The Plaintiff is entitled to ongoing indemnity benefits until further order of the Commission. Compensation due that has accrued shall be paid in a lump sum. N.C. Gen. Stat. § 97-29.
6. The plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred as a result of the injury by accident to her neck and back on January 30, 2001, for so long as such examinations, evaluations and treatments may reasonably be requested to effect a cure, or give relief and will tend to lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-25; 97-2(19).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney fee herein approved, defendants shall pay to plaintiff the maximum weekly compensation rate for 2001 which is $620.00. The beginning dates of the indemnity shall be determined based upon the Defendant's attendance and other business records. The Plaintiff is entitled to ongoing indemnity benefits until further order of the Commission. Compensation due that has accrued shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of the compensable injury to her neck and back on January 30, 2001, for so long as such examinations, evaluations and treatment may be reasonably necessary to affect a cure, give relief or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent (25%) of the lump sum compensation awarded plaintiff in Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be deducted from those amounts and payable directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be payable directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This 29th day of December 2003.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER