LINDA NORRIS, Employee, Plaintiff v. DREXEL HERITAGE FURNISHINGS, INC./MASCO, Employer, Defendant v. SELF-INSURED, Carrier, Defendant

No. COA99-1533

(Filed 15 August 2000)

**Workers' Compensation— fibromyalgia—occupational disease—insufficiency of evidence**

The Industrial Commission properly found in a workers' compensation action that plaintiff does not have a compensable occupational disease where the Commission found that plaintiff has fibromyalgia and that it was caused or aggravated by her employment but that there was no medical evidence that plaintiff's employment placed her at an increased risk of contracting or developing fibromyalgia. Findings regarding the nature of a disease must ordinarily be based upon expert medical testimony; here, none of the lay witnesses testified regarding any basis of knowledge as to the medical nature of plaintiff's condition or as to whether plaintiff's employment subjected her to a greater risk of contracting fibromyalgia than the general public and none of the medical witnesses expressed an opinion as to whether plaintiff's employment or occupation subjected her to a greater risk of contracting the disease.

Appeal by plaintiff from opinion and award filed 28 July 1999 by the North Carolina Industrial Commission. Heard in the Court of Appeals 31 July 2000.

*Kuehnert Bellas & Bellas, PLLC, by Eric R. Bellas, and Daniel Law Firm, PA, by Stephen T. Daniel, for plaintiff-appellant.*

*Morris York Williams Surles & Barringer, LLP, by G. Lee Martin and Kelly F. Miller, for defendant-appellee.*

WYNN, Judge.

Plaintiff appeals from an opinion and award of the Industrial Commission denying her claim for compensation arising out of an alleged occupational disease.

Compensation under the Workers' Compensation Act may be awarded for "[a]ny disease . . . which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary

NORRIS v. DREXEL HERITAGE FURNISHINGS, INC.

[139 N.C. App. 620 (2000)]

diseases of life to which the general public is equally exposed outside of the employment." N.C. Gen. Stat. § 97-53(13) (1999). Thus, for a disease to be compensable under this statute, "two conditions must be met: (1) It must be 'proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment'; and (2) it cannot be an 'ordinary disease of life to which the general public is equally exposed outside of the employment.'" *Booker v. Duke Med. Ctr.*, 297 N.C. 458, 468, 256 S.E.2d 189, 196 (1979). Whether a given illness or disease fits within the definition of an occupational disease under N.C. Gen. Stat. § 97-53(13) is a mixed question of law and fact. *See Wood v. J.P. Stevens & Co.*, 297 N.C. 636, 640, 256 S.E.2d 692, 695 (1979). The claimant bears the burden of proving the existence of an occupational disease. *See Gay v. J.P. Stevens & Co.*, 79 N.C. App. 324, 331, 339 S.E.2d 490, 494 (1986).

Plaintiff began working for the defendant-employer in 1975 and continued to work for the employer through 1996. In 1981 plaintiff began operating a splicing machine. As operator of the splicing machine, plaintiff was responsible for feeding strips of veneer into the machine. Plaintiff performed this job by leaning forward over the machine and pushing the strips, weighing less than one pound, with her arms. Plaintiff also worked as a "tailer." In this capacity plaintiff caught and stacked sheets of veneer strips as they exited from the splicing machine. This job also required plaintiff to use her arms, although not as quickly or as often as she did when operating the splicing machine. Plaintiff also worked as a "patcher," repairing cracks and other defects in strips or sheets of veneer. She manually applied tape to the defective veneer.

Plaintiff first began to notice a physical problem in July of 1995 when she observed the appearance of a knot on the back of her neck. She experienced burning and stinging sensations across her shoulders that disappeared over time. She then began to experience pain in her back. She initially consulted a chiropractor for treatment. After obtaining unsatisfactory results, in September of 1995 she consulted her family physician, Dr. Clay W. Richardson, who diagnosed her as having fibromyostitis or fibromyalgia. Plaintiff subsequently consulted a number of other medical specialists seeking diagnosis and treatment of her condition. All but one, Dr. Franciso A. Naveira, a specialist in chronic pain management, diagnosed plaintiff as having fibromyalgia. Dr. Naveira diagnosed plaintiff's condition as myofascial pain syndrome.

Plaintiff did not work from March 1996 until October 1996, when she returned to work for the employer as a splicing machine operator. In March 1997 she changed jobs to a tailer. As of the date of the hearing before the deputy commissioner on 26 March 1998, she was employed by defendant as a tailer working a full forty-hour week.

The Commission found that plaintiff has fibromyalgia and that her fibromyalgia was caused or aggravated by her employment with defendant. However, because there was no medical evidence that plaintiff's employment with defendant placed her at an increased risk of contracting or developing fibromyalgia as compared to the general public not so employed, the Commission concluded that her fibromyalgia "was not due to causes or conditions that were characteristic of and peculiar to her employment with defendant and, therefore, was not an occupational disease."

Plaintiff contends that the foregoing conclusion of the Commission is incorrect. She argues she proved that her employment as a splicing machine operator placed her at a greater risk of contracting fibromyalgia than the general public. She relies upon testimony of the medical experts whereby they indicated a causal relation existed between plaintiff's condition and her employment. She also relies upon the testimony of three co-workers who performed the job of splicer operator and who indicated they experienced similar burning sensations and knots in their upper backs and shoulders as a result of performing the job. Plaintiff also contends that the Commission acted under a misapprehension of law by requiring medical evidence to prove plaintiff's employment subjected her to a greater risk of developing fibromyalgia than the general public not so employed. We disagree.

First, we note that not only must a claimant prove that a disease is caused by the employment, but that the disease is characteristic of persons engaged in the particular trade or occupation in which the plaintiff is engaged and that the disease is not an ordinary disease of life to which the general public is equally exposed. *See Hansel v. Sherman Textiles*, 304 N.C. 44, 52, 283 S.E.2d 101, 106 (1981). Proof of a causal relationship of the disease to the employment requires application of a different factual standard. *See Rutledge v. Tultex Corp.*, 308 N.C. 85, 301 S.E.2d 359 (1983).

Second, with regard to the necessity of proof by expert medical testimony, our Supreme Court has stated that "where the exact

nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). It has also stated that when " 'a layman can have no well-founded knowledge and can do no more than indulge in mere speculation (as to the cause of a physical condition), there is no proper foundation for a finding by the trier without expert medical testimony.' " *Gillikin v. Burbage*, 263 N.C. 317, 325, 139 S.E.2d 753, 760 (1965) (quote omitted). Therefore, findings regarding the nature of a disease—its characteristics, symptoms, and manifestations—must ordinarily be based upon expert medical testimony. *See Wood*, 297 N.C. at 640, 256 S.E.2d at 695.

In the present case none of the lay witnesses testified regarding any basis of knowledge as to the medical nature of plaintiff's condition or as to whether plaintiff's employment subjected her to a greater risk of contracting fibromyalgia than the general public. Moreover, although they testified that they experienced similar symptoms as plaintiff, none of plaintiff's co-workers testified that they had consulted a physician and had been diagnosed with fibromyalgia. Consequently, their testimony could not have provided a basis for a finding that plaintiff's employment subjected her to a greater risk for contracting fibromyalgia.

Further, none of the medical witnesses expressed an opinion as to whether plaintiff's employment or occupation subjected her to a greater risk of contracting the disease. In fact, Dr. Naveira, upon whose deposition testimony plaintiff places great reliance, testified that he could not recall ever having as a patient a splicer operator with fibromyalgia.

We hold the Commission properly found and concluded, based upon the evidence presented, that plaintiff does not have a compensable occupational disease. We therefore affirm the opinion and award.

Affirmed.

Chief Judge EAGLES and Judge HORTON concur.