***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award of the Deputy Commissioner. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Cameron M. Harris Company as its third-party administrator.
3. The employee-employer relationship existed between the parties at all relevant times. Plaintiff was employed by defendant at its facility in Landis, North Carolina, from July 1, 1967 through December 30, 1998.
4. Plaintiff's average weekly wage is $413.21, which yields a compensation rate of $275.47.
5. The following exhibits were admitted into the evidence of record by the parties at the hearing before the Deputy Commissioner:
a. Stipulated Exhibit 1-Form 18B
b. Stipulated Exhibit 2-Amended Form 18B
c. Stipulated Exhibit 3-Form 61
d. Stipulated Exhibit 4-Plaintiff's responses to discovery
e. Stipulated Exhibit 5-Defendant's responses to discovery
f. Stipulated Exhibit 6-Social Security report
g. Stipulated Exhibit 7-Medical records
h. Stipulated Exhibit 8-Social Security disability file
 i. Stipulated Exhibit 9-Defendant's air quality studies and pulmonary test studies
6. The issues for determination by the Commission are whether or not plaintiff suffered a compensable occupational disease, and if so, to what benefits and compensation is plaintiff entitled; when was plaintiff last injuriously exposed to cotton dust; is plaintiff entitled to have any compensation due increased by 10% pursuant to N.C. Gen. Stat. § 97-12; and did defendant unreasonably defend this claim, entitling plaintiff to additional fees.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-four years old. He had pre-existing hypertension, diabetes mellitus, and depression, as well as a family history of heart disease and chronic obstructive pulmonary disease. Plaintiff smoked cigarettes for eighteen years and stopped smoking in 1974.
2. Plaintiff was employed at the same cotton fiber manufacturing plant from July 1, 1967 through July 21, 1998. Defendant-Parkdale Mills purchased the Landis facility on or about March 4, 1986.
3. Plaintiff worked in the spinning room and carding room for defendant, which manufactured cotton and polycotton yarn for the textile industry. Plaintiff worked in the spinning room for over 20 years. Plaintiff's duties in the spinning room required him to doff 23 frames, which had 276 spindles each. The spools of yarn were removed from the spindles when full, and plaintiff placed empty spools on each spindle to be filled by the spinning machines.
4. The spinning room was a very dusty area of the plant. Plaintiff and his coworkers testified that the air in the spinning room was usually thick with cotton dust and that the cotton dust collected on the floor and walls, on the machines and on the employees' clothes. The workers were never provided breathing protection.
5. The work area was swept at the end of each shift with a push-style broom. The sweeping created more dust by moving the dust which had fallen to the floor during the shift. In the spinning room, there were blowers around the frames to blow off the cotton dust or fiber at the end of the shift. In addition, every weekend the spinning room was blown down. Plaintiff performed the blow down job every other weekend, using compressed air to clean the overhead pipes and entire spinning department.
6. In the card room, plaintiff's duties required him to put six large cans of raw cotton behind each drawing machine to be run into smaller yarn rope, to begin the manufacturing process with the fiber.
7. Throughout plaintiff's employment with defendant, as part of the pulmonary function testing at the plant, plaintiff completed respiratory questionnaires on which he noted he did not have breathing problems in the work environment.
8. In 1995 plaintiff began having shortness of breath and morning coughing. Defendant referred him to Dr. Stephen Proctor for an evaluation after a poor pulmonary function test at the plant. Plaintiff reported to Dr. Proctor that he did not have any additional problems breathing in the plant. Dr. Proctor diagnosed plaintiff with asthma. In his February 27, 1995 report, Dr. Proctor noted plaintiff's shortness of breath tended to be episodic and not associated with work. It was further noted that plaintiff described no increase in symptoms at the beginning of the work week.
9. On July 28, 1995, plaintiff returned to Dr. Proctor. At this visit plaintiff reported his shortness of breath was worse at work and his symptoms were worse on the first day of the work cycle. At the Deputy Commissioner hearing, plaintiff explained that although he had symptoms the first day of the week in 1995, he did not realize that his problems were a result of his job duties. At his deposition Dr. Proctor stated that the change in plaintiff's symptoms could be explained as a progression of his condition over the past months or by the power of suggestion, in that plaintiff may not have recognized a pattern of shortness of breath at work initially. After being questioned by Dr. Proctor, plaintiff may have then noticed such a pattern. In 1995 Dr. Proctor felt that plaintiff's most likely diagnosis was asthma, but that many of his symptoms were suggestive of byssinosis.
10. Dr. Proctor continued to treat plaintiff and in 1998 diagnosed plaintiff with byssinosis and in 1999 concluded that plaintiff was unable to work in any employment. The diagnosis was based on plaintiff's reported symptoms over the past three years of dyspnea particularly at work and on the first day of the work cycle, wheezing, and a cough productive of green phlegm, as well as chest tightness when he was in the mill. Plaintiff also told Dr. Proctor that his symptoms worsened when the material he worked with changed from 50/50 cotton/polyester to 100% cotton.
11. Plaintiff completed an I.C. Form 18, dated June 2, 1998, notifying his employer that he contended he contracted byssinosis on February 23, 1998. Plaintiff left his employment in August 1998 and has not returned to any employment.
12. On September 12, 1998, defendant referred plaintiff to Dr. Douglas Kelling for an evaluation regarding a possible occupationally-related lung disease. Dr. Kelling, a member of the Industrial Commission's Advisory Medical Committee, conducted an examination of plaintiff that included a medical histroy, personal history, family history, review of systems and physical exam. Dr. Kelling also reviewed other diagnostic studies. Plaintiff informed Dr. Kelling that he did not have in-plant breathing problems related to cotton dust. Based upon the respiratory evaluation and history from plaintiff, Dr. Kelling found no evidence of byssinosis, but rather diagnosed plaintiff with hyperreactive airway disease. Dr. Kelling stated he based his opinion on the fact that plaintiff's respiratory symptoms began after 15 years of cotton dust exposure and that the normal exposure period is a maximum of 10 years for symptoms associated with cotton dust to appear. Other than the problem with the latency period, Dr. Kelling agreed that plaintiff had a breathing impairment consistent with byssinosis-related illness.
13. Plaintiff's attorney referred him to Dr. David Schwartz for a medical evaluation. Dr. Schwartz diagnosed plaintiff with byssinosis based upon his previous exposure to cotton dust, the development of airflow obstruction, profound airflow obstruction at a relatively young age, and his responsiveness to bronchodilators.
14. The Industrial Commission subsequently referred plaintiff to pulmonary medicine physician Dr. Robert R. Rostand for an advisory panel evaluation. On March 8, 2000, Dr. Rostand evaluated plaintiff, and plaintiff related a history of having worked for defendant as a doffer from 1973 through 1984, and in the card room from 1984 to 1998. During his term of employment, defendant manufactured cotton-polyester blend fiber. Plaintiff reported a history of onset of breathing problems since 1995 with progressively severe shortness of breath upon significant physical exertion. Plaintiff was approximately 5'6" tall and weighed 245 pounds at the time of the evaluation.
15. Following the evaluation, Dr. Rostand diagnosed plaintiff with reactive airways disease consistent with a diagnosis of adult onset asthma. He noted plaintiff had a 35 year history of exposure to cotton dust. However, Dr. Rostand did not diagnose plaintiff with byssinosis because the pulmonary function test data did not show any differences during the work shift. Based upon all of plaintiff's medical conditions, Dr. Rostand found plaintiff was not capable of gainful employment. Further, Dr. Rostand found plaintiff to have reactive airways disease consistent with a diagnosis of adult onset asthma unrelated to an occupational exposure to cotton dust.
16. Plaintiff filed an I.C. Form 18B on July 24, 2001 on which he indicated he was employed by defendant from January of 1965 to June of 1965 and from July of 1967 to December of 1998. He further noted having been diagnosed with byssinosis by Dr. Stephen Proctor on August 19, 1998 and with reactive airway disease and asthma by Dr. Robert R. Rostand on March 8, 2000.
17. The Full Commission finds plaintiff's testimony to be credible.
18. The Full Commission gives greater weight to the causation opinions of Drs. Schwartz and Proctor than to those of Drs. Rostand and Kelling. Dr. Proctor is the only physician who treated plaintiff and regularly saw him over a period of several years. Dr. Proctor and Dr. Schwartz reached the same diagnosis. All doctors that saw plaintiff felt plaintiff had been exposed to large quantities of cotton dust.
19. Plaintiff has proven by the greater weight of the competent medical evidence that the exposure to cotton dust in his employment with defendant contributed to the development of or was a significant causal factor in the development of the occupational lung disease of byssinosis. However, none of the medical experts was asked or testified that plaintiff's employment placed him at an increased risk of developing byssinosis or other respiratory disease as compared to the general public not so employed.
20. The Full Commission finds based upon the greater weight of the evidence of record that plaintiff did not develop an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment with defendant and which excluded all ordinary diseases of life to which the general public was equally exposed.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff alleged that he developed byssinosis or asthma as a result of exposure to cotton dust in his employment with defendant. Since neither of these diseases is a specific disease listed under the statute, plaintiff must proceed under N.C. Gen. Stat. § 97-53(13); Hendrix v. Linn-Corriher Corp., 317 N.C. 179,345 S.E.2d 374 (1986). In order to establish that he suffers from a compensable occupational disease, plaintiff must prove that he suffers from the disease and that the disease is due to causes and conditions which are peculiar to his employment and that it is not an ordinary disease of life to which the general public is equally exposed. N.C. Gen. Stat. § 97-53(13); Rutledge v. TultexCorp., 308 N.C. 85, 301 S.E.2d 359 (1983).
2. Plaintiff failed to prove that his byssinosis was due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment. Although the greater weight of the medical testimony causally related plaintiff's pulmonary condition to his employment, no expert medical testimony was offered to show that plaintiff was at an increased risk of contracting byssinosis because of his employment with defendant. Norris v. Drexel Heritage Furnishings,Inc., 139 N.C. App. 620, 534 S.E.2d 259 (2000). Therefore, there is insufficient expert medical evidence of record to support a finding that plaintiff's employment with defendant placed him at an increased risk of contracting byssinosis as compared to the public not so exposed. N.C. Gen. Stat. § 97-53(13).
3. Plaintiff is, therefore, not entitled to compensation for his lung disease under the provisions of the North Carolina Workers' Compensation Act. Id.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the the law, plaintiff's claim for workers' compensation benefits must be and is hereby DENIED.
2. Each side shall pay their own costs.
This the 20th day of August, 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
LKM/kjd