* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Glenn. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Glenn with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All the parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. An employee-employer relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. Plaintiff's average weekly wage was $616.70 per week, yielding a compensation rate of $411.15 per week at all relevant times herein.
4. Defendant-employer was insured for workers' compensation by Atlantic Mutual/GAB Robins at all relevant times herein.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was a twenty-six year woman on the date of the hearing before Deputy Commissioner Glenn. Plaintiff first starting working for defendant-employer in January 2000 as a veterinary technician.
2. Prior to working for defendant-employer, plaintiff worked for Steel Creek Animal Hospital as a receptionist, but was not involved in the treatment of animals.
3. Defendant-employer provides emergency medical care to animals and ongoing care for the animals in the hospital. Plaintiff worked predominantly in the emergency department.
4. Plaintiff's work with animals included doing blood work, placing and removing catheters, taking x-rays, taking vital signs, giving medications, cleaning cages, grooming the animals for treatment (shaving), restraining animals, carrying animals, and other tasks that kept her in close proximity and resulted in prolonged direct physical contact with hundreds of animals for extended periods of time.
5. While working for defendant-employer, plaintiff estimated that from 1 to 3 animals that were treated daily would have ticks. Plaintiff testified that on occasion ticks could be seen roaming around the facility, including crawling on the floor, cabinets, and walls.
6. Plaintiff testified that she found ticks on her body during the workday or immediately after work on more than one occasion. Plaintiff also testified that she found ticks on her person that had become attached either during or after work.
7. Plaintiff testified that some of the animals that defendant-employer treated had Lyme disease.
8. Plaintiff testified that on or about February 15, 2001, an injured dog name Scooby Doo was treated and she worked with the animal from 6:30 PM to 2:00 AM. The dog was covered with mud, and was infested with ticks and fleas.
9. Plaintiff testified that following this incident, when she returned home and while dressing for bed, she and her husband found two small ticks attached to her shoulder which her husband removed.
10. Plaintiff testified that she began to experience nausea, vomiting and headaches during her second pregnancy, around March or April 2002. Plaintiff testified that she had only experienced nausea during the first trimester of her fist pregnancy in 1998/1999. Plaintiff sought and received treatment for her condition, but it was not until a cardiologist suggested and caused plaintiff to be tested in April/May 2004 that plaintiff was diagnosed with Lyme disease.
11. Plaintiff testified that her condition worsened in April 2003, causing her to miss substantial time from work, including most of the two years prior to the hearing before the Deputy Commissioner.
12. Dr. Joseph Jemsek, an internist specializing in infectious disease, treated plaintiff and diagnosed her with Lyme Disease. Dr. Jemsek treats patients on a regular basis for Lyme Disease.
13. Dr. Jemsek could not testify as to how or when plaintiff was infected with Lyme Disease. Dr. Jemsek testified that Lyme Disease is known to be spread by ticks after they have attached to the person's body for at least a 24 hour period. Dr. Jemsek also indicated that he could not say when plaintiff could have been infected. It could have been while working for defendant-employer or it could have been days, months or years prior to her employment with defendant-employer. Nor could he say any pre-existing condition of Lyme Disease plaintiff may have had was aggravated by her employment with defendant-employer.
14. Dr. Jemsek stated that many people are infected with Lyme Disease and they are asymptomatic and remain that way until some event causes the symptoms to become symptomatic without known cause. Dr. Jemsek further testified that approximately fifty percent (50%) of people bitten by a tick never realize that they have been bitten.
15. Dr. Jemsek testified that the currently accepted duration of attachment necessary for a tick to transmit Lyme Disease is approximately twenty-four hours.
16. Only a certain type of tick referred to as a black-legged, seed or deer tick transmits Lyme Disease.
17. Although plaintiff has testified that she removed two small ticks from her person on February 15, 2001, it would be mere speculation to attribute plaintiff's Lyme Disease to this incident. There has been no evidence that the ticks removed were of the appropriate variety of tick to cause Lyme Disease. Nor has evidence been presented that the ticks removed on February 15, 2001 were attached a sufficient amount of time to transmit Lyme Disease.
18. The undersigned find as fact that plaintiff has failed to prove that there is a causal connection between plaintiff's Lyme disease and her employment.
19. Plaintiff has failed to show that Lyme Disease is characteristic of her profession. Further, the greater weight of the evidence shows that members of the general public are equally exposed to Lyme Disease. Therefore, plaintiff has failed to show that her employment placed her at increased risk to contract Lyme Disease.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. §97-2(6). Plaintiff must prove increased risk in order for an insect bite to be a compensable injury by accident. Minter v.Osborne Co., 127 N.C. App. 134, 487 S.E.2d 835 (1997). Accordingly, plaintiff has failed to establish that she suffered from a compensable injury by accident.
2. In order to establish an occupational disease under N.C. Gen. Stat. § 97-53(13), a claimant must show that the employment exposed him to a greater risk of contracting the disease than the public generally. Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983). In addition, the claimant must show that the employment significantly contributed to, or was a significant causal factor in, the development of the disease. Hardin v.Motor Panels, Inc., 136 N.C. App. 351, 524 S.E.2d 368, disc.rev. denied, 351 N.C. 473, 543 S.E.2d 488 (2000). Where the condition was aggravated but not originally caused by the claimant's employment, a claimant must show that the employment placed him at a greater risk for contracting or developing the condition. Futrell v. Resinall Corp., 151 N.C.App. 456,566 S.E.2d 181 (2002), aff'd per curiam, 357 N.C. 158,579 S.E.2d 269 (2003); Norris v. Drexel Heritage Furnishings, Inc.,139 N.C.App. 620, 534 S.E.2d 259 (2000), cert. denied,353 N.C. 378, 547 S.E.2d 15 (2001). There must be a "distinctive relation" between the occupation and the disease. Booker v. Duke MedicalCenter, 297 N.C. 458, 474, 256 S.E.2d 189, 199 (1979). Accordingly, plaintiff has failed to establish that she suffers from an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is HEREBY DENIED.
2. Each side shall bear their respective costs.