***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Stanback.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at and following the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter. *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Worker's Compensation Act.
4. An employment relationship existed between the employee and the defendant-employer Plymouth Printing Co., Inc., and The Hartford was the Insurer on the risk on the date of disability of February 2, 2007.
5. The employee's average weekly wage will be determined by a Form 22 to be submitted at the time of hearing.
6. Documents entered into evidence include the following:
 a. Stipulated Exhibit #1 — Pre-Trial Agreement
 b. Stipulated Exhibit #2 — Industrial Commission Forms; Plaintiff's medical records; Job Analysis; Job Description
 c. Stipulated Exhibit #3 — Job Analysis Video (1-DVD)
7. The following depositions were taken and received into the record before the Deputy Commissioner:
 a. Dr. Vincent Paul
 b. Dr. James Aplington
 c. Mr. Andrew Graham
 d. Mr. William McClure
8. Issues for determination include the following:
 a. Did Plaintiff suffer an occupational disease that is compensable under the language of N.C. Gen. Stat. § 97-53 on February 2, 2007, while she was employed by Plymouth Printing Co, Inc.? *Page 3 
 b. Did Plaintiff's job with Defendant-Employer expose her to an increased risk for the development of an occupational disease than that which generally faces the public at large?
 c. If so, was Plaintiff disabled as a result of the alleged occupational disease of February 2, 2007?
 d. If so, to what benefits, if any, is Plaintiff entitled for the compensable occupational disease of February 2, 2007?
 *********** EVIDENTIARY RULINGS
The objections raised during the depositions in this matter are OVERRULED.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by Defendant-Employer as a Folding Technician at the time of her alleged development of an occupational disease in February of 2007.
2. Plaintiff's job duties included, but were not limited to, loading paper on to the printing machine, grabbing as much paper as one could handle, placing it on the press, and aligning the paper for use in the machine. This task was performed every 10 to 15 minutes.
3. The paper, after being processed by the folding machine, becomes inserts which are packaged by a co-employee into trays. The Folding Technician then takes the trays, weighing approximately two to five pounds, and places them in boxes, referred to as cartons. This tray lifting task is done every two to five minutes. *Page 4 
4. The aforementioned cartons, once full, are then sealed, and the Folding Technician lifts the carton onto a scale to be weighed for quality control. The carton is then lifted again by the Folding Technician and placed on a pallet. The cartons typically weigh 35 pounds, and two cartons are processed per hour.
5. The Folding Technician is also responsible for setting up the printing machines for use in the facility, including maintenance and resetting fold plates on the machine.
6. At the conclusion of the shift, the Folding Technician takes her finished pallet back to the shipping area using a manual pallet jack. According to a video analysis performed by Intracorp at the request of Defendants, a full pallet weighs approximately 1800 pounds.
7. Intracorp performed a job site analysis of the Folding Technician position. The Intracorp analysis found that as a Folding Technician, Plaintiff was exposed to frequently lifting 30-40 pounds in the performance of her job, occasionally lifting 40-50 pounds, and bilateral repetitive use of the upper extremities at the midline on a constant to frequent basis.
8. Plaintiff performed the Folding Technician position on 12-hour shifts, for periods of three to five days in a row. Plaintiff was employed as Folding Technician for approximately two years.
9. Over time, Plaintiff began to develop mid-back pain and noticed that it was taking longer for her to recuperate following her shifts as a Folding Technician.
10. As a result of her ongoing pain, Plaintiff sought treatment with Dr. Vincent Paul, a board certified orthopaedic specialist, on February 5, 2007. Dr. Paul found at this initial visit that Plaintiff had tenderness to palpation in the thoracic spine from T-8 to T-12, and he initially diagnosed Plaintiff with a thoracic sprain/strain. *Page 5 
11. Plaintiff was given medication and did note some improvement in her pain level upon returning to Dr. Paul on February 19, 2007. At that time, Plaintiff continued with mid-back pain, and Dr. Paul recommended an MRI of the thoracic spine.
12. Plaintiff's MRI revealed thoracic disc bulges at T9-10, T10-11, and T11-12, for which Dr. Paul recommended Plaintiff undergo a series of injections with Dr. Hao Wang. Dr. Paul also removed Plaintiff from work as of February 26, 2007, as a result of her disc bulges and the pain associated therewith.
13. Plaintiff underwent an interlaminar epidural steroid injection at T11-12 performed by fluoroscopy by Dr. Wang on April 10, 2007. Following the injection, Plaintiff indicated her pain was actually worse, and a determination was made not to proceed with any further injections.
14. Throughout Plaintiff's medical records for treatment rendered by Dr. Paul, including the February 19, 2007, and May 7, 2007, office visits, Dr. Paul indicated that Plaintiff's thoracic conditions were the result of her repetitive work activities in her position as a Folding Technician with Defendant-Employer.
15. Dr. Paul's deposition testimony was consistent with his opinion in the medical records, in that he opined that it was more likely than not that the repetitive lifting required in Plaintiff's job caused her thoracic disc bulges and annular tears.
16. Following Plaintiff's injection therapy, Plaintiff was released from physical therapy and was administered a second Sterapred Dosepak by Dr. Paul. As of June 13, 2007, Plaintiff's pain level was between 1 and 2 on a scale of 1 to 10. Dr. Paul continued to keep Plaintiff out of work. *Page 6 
17. In a July 11, 2007, opinion letter, Dr. Paul determined Plaintiff to be at maximum medical improvement for her thoracic injuries; he assigned her a permanent partial impairment rating to the back of 10.5% and placed Plaintiff on permanent restrictions of no repetitive bending, twisting, or lifting with her back, and a weight limit of five pounds.
18. Dr. Paul opined that Plaintiff should remain out of work until she can participate in a functional capacity exam.
19. The opinion testimony of Dr. Vincent Paul and Dr. James Aplington was that the input of an industrial rehabilitation expert would be of considerable benefit to a determination on the issue of any increased risk placed on Plaintiff as a result of her work duties in the Folding Technician position with Defendant-Employer.
20. N. Andrew Graham, an industrial rehabilitation expert, conducted a full review of Plaintiff's medical treatment with Dr. Paul, reviewed the video for the Job Analysis by Intracorp, and reviewed the report of the Job Analysis by Intracorp to assess the risk associated with Plaintiff's work as a Folding Technician.
21. Mr. Graham testified that Plaintiff's job as a Folding Technician with Defendant-Employer, particularly as a result of the repetitive lifting and static postural positions associated with the performance of the material handling, lifting, lowering and carrying, "exposed [Plaintiff] to an increased risk for the development of thoracic injury and disc herniation." However, Mr. Graham did not provide any expert testimony as to how that increased risk due to Plaintiff's job may have compared with the general public risk of developing such conditions.
22. Dr. Paul testified that he agreed with the expert opinion of Mr. Graham that Plaintiff's position as a Folding Technician placed her at an increased risk for developing annular tears in her thoracic spine. However, as Dr. Paul further explained: *Page 7 
 I do agree with [Mr. Graham's opinion]. I think the flaw — and I'm going to be philosophical here — in the law is that there are a number of people who do the same jobs that don't get that injury. The problem is the physiology of the patient and their anatomic structure and their spine structure and their ability to inflame and have pain, and the tissue quality, which is genetic and specific to the individual, is variable. So that not everybody that does that job is going to get the problem, just like carpal tunnel. But I think in her situation it is most likely that with her body type and physiology that doing this specific job would lead her to a greater risk of getting it in her specific situation.
The Full Commission accordingly finds that Dr. Paul's expert testimony addresses the increased risk to Plaintiff,individually, of Plaintiff's job causing Plaintiff's thoracic spine condition, and that Dr. Paul was not offering any expert opinion as to how that increased risk may have compared with the general public risk of developing such conditions.
23. Dr. Applington reviewed Dr. Paul's medical records and the Intracorp Job Analysis report and video. Dr. Applington opined that any annular tearing in Plaintiff's thoracic spine was not due to her job. As Dr. Applington explained:
 I think the job functions she was having were no different than what you would do in your house: carrying laundry upstairs, taking out the garbage, taking trash out, moving furniture, things that a housewife or just a — you don't have to be a housewife, but just a woman in the house would do on a regular basis.
Dr. Applington testified that disc bulges and annular tears such as those experienced by Plaintiff are "ordinary findings in the general population."
24. William McClure, a second industrial rehabilitation expert, performed a three-hour observation of the Folding Technician work environment, including objective measurements of the work postures associated with the position. Mr. McClure opined that "the work tasks identified did not reflect any risk factors above what's considered acceptable risk for *Page 8 
development of . . . musculoskeletal and/or cumulative trauma disorders" such as Plaintiff's thoracic spine condition.
25. Wanda Morgan, Human Resources Administrator for Defendant-Employer, testified that she reviewed the workers' compensation files of Defendant-Employer's North Carolina plant dating back to 1998, and did not see any files "where a folding technician had a Workers' Compensation claim with respect to a back complaint due to the repetitive lifting or bending or twisting for that particular position."
26. The Full Commission finds, based on the greater weight of the evidence of record, that Plaintiff has failed to show that her thoracic spine condition is characteristic of persons engaged in the particular trade or occupation in which the Plaintiff was engaged, or that Plaintiff's thoracic spine condition is not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation. The Full Commission further finds that Plaintiff has failed to show that her employment exposed Plaintiff to a greater risk of contracting her thoracic spine condition than the public generally.
27. Upon review of Defendant's Form 22 submitted as part of the stipulated exhibits, the Full Commission finds that Plaintiff's average weekly wage is $699.02, yielding a compensation rate of $466.04.
28. From February 2007 to May 2007, Plaintiff earned $4,368.00 in commission from her work as a real estate agent.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following: *Page 9 
 CONCLUSIONS OF LAW
1. Plaintiff asserts that she is entitled to workers' compensation benefits for her thoracic spine condition as an occupational disease under N.C. Gen. Stat. § 97-52, which provides that the "[d]isablement or death of an employee resulting from an occupational disease described in G.S. 97-53 shall be treated as the happening of an injury by accident within the meaning of the North Carolina Workers' Compensation Act."
2. N.C. Gen. Stat. § 97-53(13) provides that a condition not specifically described in N.C. Gen. Stat. § 97-53 may nonetheless constitute an occupational disease, if that condition "is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment."
3. To satisfy the requirements of N.C. Gen. Stat. § 97-53(13), a plaintiff:
 must establish that his disease or condition meets the following three criteria: (1) the condition is "characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged"; (2) the condition is "not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation"; and (3) there is "`a causal connection between the disease and the [claimant's] employment.'" The first two elements of the three-prong test are satisfied where the plaintiff can show that "the employment exposed [him] to a greater risk of contracting the disease than the public generally."
Futrell v. Resinall Corp.,151 N.C.App. 456, 458-59, 566 S.E.2d 181, 183 (2002), affirmed percuriam, 357 N.C. 158, 579 S.E.2d 269 (2003) (citingRutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983)).
4. To satisfy the test set forth in Rutledge and described inFutrell,
 not only must a claimant prove that a disease is caused by the employment, but that the disease is characteristic of persons *Page 10 
engaged in the particular trade or occupation in which the plaintiff is engaged and that the disease is not an ordinary disease of life to which the general public is equally exposed. Proof of a causal relationship of the disease to the employment requires application of a different factual standard.
Norris v. Drexel Heritage Furnishings, Inc./Masco,139 N.C.App. 620, 622, 534 S.E.2d 259, 262 (2000), cert.denied, 353 N.C. 378, 547 S.E.2d 15 (2001) (citations omitted). In Norris, the Court of Appeals rejected the plaintiff's contention that evidence sufficient to show that her fibromyalgia was caused or aggravated by her employment with the defendant was also sufficient to establish that her employment placed her at a greater risk of contracting fibromyalgia than the general public.
5. In the present case, Plaintiff has put forth evidence to show that her thoracic spine condition was caused or aggravated by her employment. However, Plaintiff has failed to show that such a thoracic spine condition is characteristic of persons engaged in her particular trade or occupation, or that the condition is not an ordinary disease of life to which the general public is equally exposed. Because Plaintiff has failed to show that her employment exposed her to a greater risk of contracting her thoracic spine condition than the public generally, Plaintiff has failed to show that she has suffered an occupation disease pursuant to N.C. Gen. Stat. § 97-53(13). See Norris.
6. Because Plaintiff has failed to show that she has suffered an occupational disease pursuant to N.C. Gen. Stat. § 97-53(13), her claim for workers' compensation benefits pursuant to N.C. Gen. Stat. § 97-52 must fail.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following: *Page 11 
 AWARD
1. Plaintiff's claim for compensation for her thoracic spine condition as an occupational disease is hereby DENIED.
2. Defendants shall pay the costs.
This the 27th day of July, 2009.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ STACI MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1